MARY C. BRUCE v. CONNECTICUT MUTUAL LIFE INSURANCE COMPANY.

November 29, 1898.

Nos. 11,292—(74).

Life Insurance—Questions in Application—Other Insurance—Royal Arcanum—Rulings on Evidence.

In an application for life insurance, made a part of policies thereafter issued, the applicant was asked, (5E) "Has any company or association ever declined or postponed granting or reviving insurance on your life, either for any particular amount or in any particular form?" to which he answered, "No." And, by the next question, he was asked, (F) "Has any opinion ever been sought from, or any statement made to, or examination made by, or any consultation ever held with, any person as to whether your life was insurable, except as above mentioned?" to which he made the same answer, "No." Upon the death of the assured, the company refused to pay, upon the ground, among others, that the applicant had untruthfully, falsely and fraudulently answered these two questions. *Held* that, upon the trial of an action brought to recover upon these policies, the court erred when it ruled that the Royal Arcanum,

a fraternal and beneficial association issuing certificates to its members, whereby, upon the death of a member, the beneficiary named is entitled to receive a stated sum of money out of a fund created by the association by initiation fees and assessments upon surviving members, was not an association, within the scope and meaning of question (5E), and also *held*, that the court erred when it rejected evidence, offered by defendant's counsel, tending to show that, prior to the making of the application in question, the applicant had sought the opinion of the medical examiner of the Royal Arcanum as to whether or not his life was insurable, and had been examined with reference thereto, although he was at the time seeking to become a member of such association.

From an order of the district court for Hennepin county, Simpson, J., denying a new trial after a verdict of $2,500 in favor of plaintiff, defendant appealed. Reversed.

*Markham, Moore & Markham,* for appellant.

Where the application for insurance is, by the express terms of the policy, made a part thereof, such application becomes a part of the insurance contract so far as any questions may arise out of it. Fitzpatrick v. Hartford, 56 Conn. 116; Brady v. United Life Ins. Assn., 60 Fed. 727; Price v. Phœnix Mut. Life Ins. Co., 17 Minn. 473 (497); Provident Sav. Life Assur. Soc. v. Llewellyn, 58 Fed. 940; Foot v. Ætna, 61 N. Y. 571; Miles v. Connecticut, 3 Gray, 580; Cobb v. Covenant, 153 Mass. 176; Ætna Life Ins. Co. v. France, 91 U. S. 510; Phœnix Life Ins. Co. v. Raddin, 120 U. S. 183; Mutual v. Miller, 39 Ind. 475; Alabama v. Garner, 77 Ala. 210. Any statement, description or undertaking on the part of the insured, on the face of the policy, which relates to the risk, is a warranty. Wood v. Hartford, 13 Conn. 533. See also Kelsey v. Universal, 35 Conn. 225; Bennett v. Agricultural, 50 Conn. 420; Fitzpatrick v. Hartford, supra; Brady v. United Life Ins. Assn., supra. False answers in the application, whether regarded as material representations or warranties, avoid the policy. Chambers v. Northwestern Mut. Life Ins. Co., 64 Minn. 495. See also Price v. Phœnix Mut. Life Ins. Co., supra; Jeffries v. Life Ins. Co., 22 Wall. 47.

As to the distinction between insurance and benevolent societies, see State v. Merchants, 72 Mo. 146, 152; Bolton v. Bolton, 73 Me. 299; Com. v. Wetherbee, 105 Mass. 149, 160; Schunck v. Gegen-

seitiger, 44 Wis. 369; Erdmann v. Mutual, 44 Wis. 376; Dietrich v. Madison, 45 Wis. 79; Kentucky v. Miller, 13 Bush, 489; Illinois v. Baldwin, 86 Ill. 479; State v. First Nat. Assn., 35 Kan. 51; State v. Nichols, 78 Iowa, 747; Co-operative v. Lewis, 12 Lea, 136; Presbyterian v. Allen, 106 Ind. 594; Sherman v. Com., 82 Ky. 102; Holland v. Taylor, 111 Ind. 121; State v. Benton, 35 Neb. 463; Walter v. Hensel, 42 Minn. 204; Brown v. Balfour, 46 Minn. 68; Rensenhouse v. Seeley, 72 Mich. 603; Farmer v. State, 69 Tex. 561; Supreme v. Larmour, 81 Tex. 71; Chartrand v. Brace, 16 Colo. 19; State v. Citizens, 6 Mo. App. 163; State v. Root, 83 Wis. 667; State v. Bankers, 23 Kan. 499; Penn v. Folmer, 87 Pa. 133; Illinois v. Winthrop, 85 Ill. 537; Golden v. People, 118 Ill. 492; State v. Standard, 38 Oh. St. 281.

*Weed Munro,* for respondent.

The Royal Arcanum is not to be considered an insurance company within the meaning of the question numbered (5E). See Britton v. Supreme, 46 N. J. Eq. 102; State v. Benton, 35 Neb. 463; Fawcett v. Supreme, 64 Conn. 170.

The distinction between benevolent, fraternal societies having an insurance feature and insurance companies claiming to be such societies is clearly defined in Berry v. Knights T. & M. L. Ins. Co., 46 Fed. 439, 50 Fed. 512. See also Swift v. San Francisco, 67 Cal. 567; State v. Citizens, 6 Mo. App. 163, 172; Niblack, Ben. Soc. (2d Ed.) § 3, citing Supreme v. Fairman, 10 Abb. N. C. 162; Durian v. Central, 7 Daly, 168; Barabaro v. Occidental, 4 Mo. App. 429; Hysinger v. Supreme, 42 Mo. App. 627; State v. Mutual, 26 Oh. St. 19; State v. Iowa, 59 Iowa, 125; Supreme v. Fairman, 62 How. Pr. 386; Rensenhouse v. Seeley, 72 Mich. 603; Com. v. Equitable, 137 Pa. St. 412; Northwestern v. Jones, 154 Pa. St. 104; Dickinson v. Ancient, 159 Pa. St. 262; Britton v. Supreme, supra; White v. National, 30 Ohio L. J. 237; Equitable v. Hazlewood, 75 Tex. 338; State v. Whitmore, 75 Wis. 332; Whitmore v. Supreme, 100 Mo. 36.

COLLINS, J.

This is an appeal from an order made by the district court denying defendant's motion for a new trial after verdict in favor of plaintiff in a suit brought to recover upon two certain policies of

insurance issued by defendant on the same day, October 15, 1894, to and upon the life of one Eli M. Bruce, who was the husband of the plaintiff herein.  Plaintiff claims that the policies were duly assigned to her on the day they were issued.  The assured died August 14, 1895; the defendant company refused to pay; and this action was brought.

The policies were issued in response to an application made by Bruce upon a printed blank furnished by the company, and he was required to answer, and did make answer, to certain printed questions appearing upon the blank, and propounded to him at the time the application was made, concerning his age, health, habits, family history and antecedents, the amount of insurance carried by him, etc.   At the foot of the application was a provision by which the assured

"Declared and warranted that the above are in all respects fair and true answers to the foregoing questions, and it is agreed by the undersigned that this application, and the several answers, warranties and agreements herein contained, shall be the basis of, a part of the consideration for, and a part of, the contract of insurance."

On the face of each policy it was stated that they were issued

"In consideration of the application for this insurance, which is the basis of and a part of this contract, and a copy whereof is hereunto annexed, and of the several answers, warranties and agreements therein contained."

A copy of the application was attached to each policy, and set out at length in the plaintiff's complaint as a part of the policy, and, among others, contained the following questions and answers:

(5A) "Is there now any insurance on your life?  Yes.  *  *  * In the Manhattan Co., for $2,500."
(E) "Has any company or association ever declined or postponed granting or reviving insurance on your life, either for any particular amount or in any particular form?   No."
(F) "Has any opinion ever been sought from, or any statement made to, or examination made by, or any consultation ever held with, any person as to whether your life was insurable, except as above mentioned?   No."

There were very many questions and answers besides those above

mentioned, the questions being of the character usually propounded by life insurance companies, but concerning which nothing now need be said, as we regard the case.

About February 1, 1895, the appellant was advised, through its local agents, that certain of the answers made by Bruce in his application for these policies were false and untrue; and it thereupon notified him that, on account of the falsity of such statements, it elected to and had declared the policies null and void. The company subsequently offered to return to Bruce the amount of the premiums which had been credited upon the policies, and asked that he surrender the policies, which he declined and refused to do; but when subsequent premiums became due thereon, a post-office money order for the amount was in each instance mailed by Bruce's father at Cincinnati, Ohio, to the company's agent at Minneapolis, where Bruce resided at the time the policies were delivered. Payment was declined by the company's local agent, and the money orders were returned.

It was alleged in the answer, among other defenses, that Bruce, some time prior to his application for these policies, had applied for membership, and for insurance on his life in the sum of $3,000, in a certain assessment life insurance association, commonly known as the "Royal Arcanum," and had been examined by the medical examiner of the association, and had been rejected on account of certain bodily infirmities, and that this association had declined to grant insurance upon his life for any amount or in any form whatever. By her reply, plaintiff admitted that the assured had applied for membership in the Royal Arcanum, had been examined by the medical examiner of that association and had been denied membership therein, but denied that the Royal Arcanum was or is an insurance company or association.

The reply then alleged that, prior to and at the time of the application for the policies in suit, the defendant and its agent were informed, and had full knowledge of the fact, that Bruce had applied for membership in, and had been rejected by, the Royal Arcanum, and that Dr. James B. Gould, as examiner at said city, had examined him upon his application for membership, and that the policies in suit were issued with full knowledge of all these

facts, and that the defendant company elected to, and did, waive all right to avoid the policies in suit by reason of the answers made by Bruce to the questions above quoted, E and F.

On the trial, there was no effort made to prove the waiver alleged in the reply, so that the averments in that behalf are immaterial. As part of its defense, the insurance company offered in evidence the laws of the state in which the association referred to in the answer, and known as the "Royal Arcanum," was incorporated, its charter and by-laws, together with the testimony of its secretary taken by deposition, and bearing principally upon the magnitude of its business, all for the avowed purpose of showing that, in fact, it was an insurance company or association, and that its certificate of membership was and is an insurance policy or contract. The court excluded all of this evidence, holding that, notwithstanding the matters embraced in these offers, the Royal Arcanum was not a company or association, within the purview of question E, and that there had been no fraud upon defendant company, and no breach of warranty by reason of the application to the Arcanum made by Bruce prior to the application upon which defendant issued its policies.

The court also excluded evidence offered by defendant as to a physical examination of Bruce made by Dr. Gould, as the medical examiner of the Arcanum, when the former applied for admission and membership in that body, and also that upon this occasion Bruce sought the opinion of Dr. Gould as to whether or not his life was insurable. Counsel also offered evidence tending to show what examination was then made by Dr. Gould, what answers were made by Bruce to questions put to him, that he was rejected by the chief medical examiner because of a diseased and unusual condition of the heart, and that his death resulted from this condition, all of which was ruled out upon objections made by plaintiff's counsel.

Counsel for plaintiff (respondent) insists that the only question for determination on this appeal is whether the Arcanum, a fraternal, beneficial organization, is an insurance company or association, within the meaning of question E. We regard this as the main question, but not the only one, and will therefore proceed to a

consideration of it, first calling attention to the form of the question, parts of which we italicize.   The question is:

"Has *any* company *or association* ever declined or postponed granting or reviving insurance on your life, either for any particular amount *or in any particular form*?"

The court below seems to have been of the opinion that the question was of a doubtful and uncertain meaning or nature, and for that reason the language used should be construed strictly against the company.   If there was doubt as to the meaning of the question, the court said that doubt should be resolved in favor of the applicant, provided that doubt would change the character of the answer as to its truthfulness or falsity.

The Royal Arcanum was organized in the state of Massachusetts in 1877, under an act [1] "concerning associations for religious, charitable, educational and other purposes."   This act as amended expressly provided for the creation of a fund by each association out of which a fixed sum should be paid to the widow, orphans or other dependents of deceased members, but to be held by the association until the death of the members should occur.   An association which issues certificates to its members, or makes a promise or agreement with its members, by which any sum of money becomes due and payable on the decease of the member, is required by the laws of that state to make annual reports to the insurance commissioner as to its membership and financial standing.

The defendant offered to show that the membership of that association was 137,000 in 1893, 148,000 in 1894, and 174,000 in 1895, with material increase each year since 1895; that it issues a certificate to each member, which entitles the beneficiary named therein, on the death of the member, to either $1,500 or $3,000, depending on the class to which the member belonged; that the fund, out of which death losses are paid, is made up of initiation fees and assessments upon members, the amount of an assessment depending upon the age of the member against whom the assessment is made; that each applicant must pass a rigid medical examination, and must be between the ages of 21 and 55; that the Arcanum had paid out as

[1] Laws 1870, c. 204.

death losses since its organization, in 1877, nearly $39,000,000, of which over $5,000,000 was paid out in the year 1896; and that in certain parts of the United States it declined to have members, because of the fact that, in the opinion of the governing body, the supreme council, the death rate and risk were too great.

We believe that, upon reading what was shown by the evidence and what was offered to be shown in regard to the character of the association, the extent and real nature of its business, very few persons would regard the Arcanum as anything more than an association engaged in the life insurance business on the assessment plan, and as much of a mutual life insurance company, proceeding on the assessment plan, with its contracts to be construed according to the rules governing other mutual life insurance companies, as was the association under consideration in Lake v. Minnesota M. R. Assn., 61 Minn. 96, 63 N. W. 261. While the constitution and by-laws may provide for local lodges, with pass-words, grips and signs,—secret societies in fact, in which lodges the social feature is made prominent,—the real object of the organization is to provide insurance upon the lives of its members, and its principal purpose is to build up and extend the insurance department, not to create and enlarge a fraternal, benevolent or charitable institution.

In 1 Bacon, Ben. Soc. § 14, it is well said:

"While all fraternal associations have the characteristic feature of the regular clubs which have often figured in the courts, many have the additional feature of agreeing to pay a certain sum, on the death of a member, to his designated beneficiaries, and these have the dual nature of which we spoke at first, and are business companies as well as social fraternities. This business, we shall see, is, legally speaking, life insurance in form and substance, although, in a philosophical sense, it is not technical and scientific life insurance."

See also Bacon, Ben. Soc. § 52; 2 May, Ins. § 550; State v. National, 35 Kan. 51, 9 Pac. 956; State v. Merchants, 72 Mo. 146; Com. v. Wetherbee, 105 Mass. 149; Supreme v. Ainsworth, 71 Ala. 443; Bolton v. Bolton, 73 Me. 299.

In view of these decisions, and what was in fact proven or offered to be proven, and the form of the question itself, we cannot see how Bruce, the appellant, could have failed to understand its meaning.

He was not asked if any life insurance company or association had declined to insure his life, but, rather, "has *any* company *or association* declined insurance on your life, either for any particular amount *or in any particular form?*" If this did not include an association like the Arcanum, what associations were within its scope? If Bruce did not seek some form of insurance when he attempted to gain admission and procure a certificate in the Arcanum, how could he do so? The court erred in its rulings whereby it held that the Royal Arcanum was not within the scope and meaning of question E.

We shall not discuss the cases cited by plaintiff's counsel on this point, except to say that in none was the question under consideration like that now before us. For illustration, the question in the case of Penn Mut. Life Ins. Co. v. Mechanics Savings B. & T. Co., 19 C. C. A. 286, 72 Fed. 413 (said by counsel to be "on all fours" with the one propounded to Bruce), was:

"Have you your life insured in this or any other company? If so, give the name of each company, and the kind and amount of each policy,"

—an altogether different interrogatory, and the decision is not in conflict with what we now hold.

While unnecessary for a determination of the present appeal, we deem it not out of place to discuss and pass upon the other questions presented. Bruce answered question F in the negative, and affirmed that he had never sought an opinion from any person as to whether his life was insurable, or made any statement to, or consulted with, or had an examination made by, any such person. It was alleged in the answer, and admitted by the reply, that Bruce had in fact been examined by Dr. Gould when applying for membership in the Arcanum, and the object of the offer of evidence as to what actually transpired at the time of this examination was to show that Bruce answered the question untruthfully. The meaning of the question was plain, and could not have been misunderstood. The words at the end of the question, "except as above mentioned," could not tend to mislead one; and while the preceding question E might be truthfully answered, "No," it does

not follow, as argued by counsel, that, if so answered, question F must necessarily be answered in the same way.

The question is not simply a formal one, but has an object, which was to elicit from the applicant full information as to the risk. It was broader than the question immediately preceding, and was not confined merely to attempting to show that Bruce sought the doctor's opinion as to his eligibility for membership in the Arcanum. Counsel went further, and offered to show that, when making the application for membership, Bruce sought Dr. Gould's opinion as to whether his life was insurable, and that he then made statements to, and consulted with, the doctor in respect to such insurability, and that he was examined with reference thereto. Surely, if Bruce had done these things, he did not truthfully answer question F.

Nor can the truth or falsity of his reply be made to depend upon circumstances. If, in fact, he sought an opinion as to his insurability, or had an examination made for the purpose of ascertaining his insurability, it is immaterial when or how it came about. His answer that he had not done so would be quite as much a departure from the truth if his inquiries had been made of, and an examination had been made by, the medical examiner of a fraternal organization, not an insurance company or association, within the meaning of question E, when attempting to become a member of such a body, as it would have been had he sought the same information of, or had the same examination by, some other person.

The court below erred in its refusal to allow defendant's counsel to show that Bruce had sought an opinion from, had made statements to, had consulted with, and had been examined by, Dr. Gould, as to whether his life was insurable.

The order refusing a new trial is hereby reversed.