SECURITY MUT. LIFE INS. CO. v. WEBB et al.

(Circuit Court of Appeals, Eighth Circuit.  March 11, 1901.)

No. 1,427.

LIFE INSURANCE—WARRANTY—BREACH OF WARRANTY—APPLICATION TO ANOTHER COMPANY.

Before insured made application for the life policy on which suit was brought, he had signed an application of another company, which had been forwarded to the company, and had substantially completed his medical examination, but afterwards refused to comply with certain physical tests required, whereupon the company formally rejected his application and notified him of the fact by mail.  Thereafter he obtained a policy of defendant company, which provided that the application should be part thereof, and the application stated that all of defendant's statements and answers therein contained would be deemed material, and any falsity therein would avoid the policy.  *Held*, that a statement denying that insured had formerly made a proposal or application to any company, agent, or association on which a policy had not been issued was substantially and technically false, and would avoid the policy.

In Error to the Circuit Court of the United States for the District of Colorado.

F. W. Jenkins and A. C. Phelps, for plaintiff in error.

Granville I. Chittenden, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge.  This is an action upon a policy of life insurance dated June 18, 1897, which was issued by the Security Mutual Life Insurance Company, a New York corporation, the plaintiff in error, upon the life of Elias H. Webb, of Denver, Colo., who was the father of the beneficiaries in whose behalf the action was instituted.  The policy was for the sum of $10,000, and by its terms made the application therefor a part of the policy.  The application which was thus made a part of the policy contained the statement that the insured warranted each and every statement and answer to the interrogatories therein contained to be "full, complete, and true," and an agreement on the part of the insured that, "if any statement or answer made as aforesaid is not full and complete, or is untrue in any respect, then the policy of insurance issued hereon shall be null and void."  In and by said application the insured further agreed that the answers and explanations given to the various questions propounded in the application, including those propounded by the medical examiner, should form "the only basis of the agreement between" him and the defendant company, and that each and every statement and answer made by him in the agreement was "material to the risk."  The defenses that were interposed by the defendant company which we deem it necessary to state were as follows:  The application for the policy contained, among others, the following question:  "Has any proposal or application to insure your life ever been made to any company, association, or agent, upon which a policy has not been issued, or upon which a policy has been issued at a

higher rate than that applied for? If so, state full particulars, to what company or association, when, etc.?" This question was answered as follows: "No." He was further asked the following questions, and answered them as indicated: "Has any physician ever given an unfavorable opinion upon your life with reference to insurance?" Answer: "No." "How long since were you attended by a physician or consulted one?" Answer: "Six months." "For what difficulty or disease?" Answer: "Slight attack of indigestion." By three separate pleas it was alleged that the answers to the aforesaid questions were false, and that the policy, for that reason, was null and void.

Inasmuch as the trial court, after hearing all the evidence in support of the aforesaid defenses and in opposition thereto, directed the jury to return a verdict in favor of the plaintiffs for the full amount of the policy, it becomes necessary to state certain facts which were established at the trial and are not disputed: Some time in January, 1897, Elias H. Webb, the deceased, entered into negotiations with the Denver agent of the Mutual Reserve Fund Life Association of New York for the issuance by that company of a policy on his life in the sum of $10,000. The negotiations proceeded so far that on January 23, 1897, Webb appeared before the Denver agent of the last-named company and signed an application for a policy in that company, wherein he answered all the questions contained in the application which the agent was authorized and required to propound. This paper was delivered to the agent when completed, and was by him forwarded to the home office in the city of New York, according to the usual course of business. It was received at the home office on January 28, 1897. After the agent's examination was completed, as aforesaid, Webb appeared on the same day before Dr. McLauthlin, the company's medical examiner at Denver, and answered such questions as were asked by him. The blank which was used by the medical examiner was not attached to the blank that had been used by the agent, but was a separate paper, and bore the following caption: "Part II. of Application in Mutual Reserve Fund Life Association." According to the regulations of the company, the medical examiner was required to propound the questions contained in this latter blank, take down the answers of the applicant, and, when completed, transmit the same directly to the home office. The deceased answered all the questions that were propounded by the medical examiner, signed the paper after his answers had been reduced to writing, and delivered it to or left it with the examiner; the same being complete and ready for transmission to the home office. There was yet another blank, bearing the caption "Part III. of Application," containing questions addressed to the medical examiner, which he alone was instructed to answer for the information of the company. One question in this blank related to the condition of the applicant's urine, which question the examiner was unable to answer on January 23, 1897, because the applicant was unable on that day to submit a sample of his urine. The examiner retained the papers marked "Part II." and "Part III." until February 24, 1897. On February 13,

1897, Dr. McLauthlin wrote to the medical examiner in chief as follows:

"Denver, Colo., Feb. 13th, 1897.

"Dear Doctor Bowden: On Jan. 23rd I examined Elias H. Webb, Denver county sheriff, (—) $10,000. At that time he could not furnish the sample of urine. Otherwise examination complete with his signature. He then changed his mind, and would not furnish urine, although agent is still hopeful. Since that time he has been, by report, quite ill, the disease being unknown to me. Shall I insist on complete re-examination if he still desires insurance? Please advise. Also shall I forward examination minus urine exam. if he refuses to consider the matter further?

"Yours, truly,                                    H. W. McLauthlin."

Dr. Bowden, on receipt of the aforesaid letter, directed that the two blanks be forwarded to the home office, and in obedience to such direction they were forwarded on February 24, 1897. At the time of transmitting the same the medical examiner at Denver appended to the document entitled "Part III." of the application the following statement, under the head "Confidential Communications":

"Feb. 24th, 1897.

"Mr. Webb declines to complete the examination by furnishing sample of urine. He claims to have been misinformed of certain facts concerning company's policy by the agent writing him. He has been sick since my examination, confined to house, but the disease is unknown to me. At the time of examination he seemed a first-class risk, although I failed to understand his long confinement in hospital in 1864 for hernia. I cannot recommend him without examination of urine; also on account of his recent illness.

"H. W. M."

It appeared further from the testimony of Dr. McLauthlin that after receiving directions from the home office to forward the documents in his hands he called on the deceased to obtain a sample of his urine for examination, that the deceased at that time expressed some dissatisfaction with the statements that had been made to him in regard to the policy which the company proposed to issue, and that he did not furnish a sample of his urine as requested. On receipt of the papers Part II. and Part III., which had been forwarded by Dr. McLauthlin, Webb's application for insurance was formally rejected by the medical examiner in chief on March 3, 1897. The records of the Mutual Reserve Fund Life Association show that on March 8, 1897, the following letter, addressed to Elias H. Webb, Denver, Colo., was prepared by the secretary of the company, and was sent out or mailed on that day in the usual course of business:

"New York, March 8, 1897.

"Elias H. Webb, Denver, Colo.—Dear Sir: Your application for insurance in this association was duly received. I regret to inform you that after a careful consideration the medical director and executive committee have declined the risk. If you have paid any money to the solicitor on account of the above application, kindly present to him his receipt for such payment, and he will return you the amount paid, in conformity with the terms of the receipt.

"Very truly yours,                    Charles W. Camp, Secretary."

The facts aforesaid are undisputed, and, as they constitute all the proof bearing upon the first of the above-mentioned defenses to the policy in suit, it becomes a question of law whether the statement

made by Webb in his application for said policy, to the effect that he had not made any proposal or application to any company or agent to insure his life upon which a policy had not been issued, was true or false. If it was a false statement, then the contract of insurance was thereby rendered "null and void," inasmuch as the parties had agreed in the application that a false statement therein contained should have that effect, and had further recited in the policy that the application should be esteemed a part thereof. The rule is well established, and is not controverted, that such agreements as these must be enforced, especially as respects false statements contained in an application with reference to material matters, and as respects statements which the parties have agreed shall be deemed material. Jeffries v. Insurance Co., 22 Wall. 47, 22 L. Ed. 833; Insurance Co. v. France, 91 U. S. 510, 23 L. Ed. 401; Anderson v. Fitzgerald, 4 H. L. Cas. 484, 487; Foot v. Insurance Co., 61 N. Y. 571; Cobb v. Association, 153 Mass. 176, 26 N. E. 230, 10 L. R. A. 666.

The contention on the part of the plaintiffs below that the aforesaid statement which was made by Webb was not false, but was in all respects true, is based wholly on the ground that he never made a complete proposal or application for insurance either to the Mutual Reserve Fund Life Association or to its agent, because at a certain point he refused to furnish a sample of his urine to the medical examiner to enable the latter to make his medical report. Because of that circumstance it is said that the case is to be treated precisely as if he had never entered into any negotiations with the last-named company or its agent for the purpose of obtaining insurance. But we have not been able to adopt that view of the case. The information which the defendant company sought to elicit by asking the deceased whether he had made a proposal or application to any other company or agent for insurance was important and material. The question was one which is usually asked of applicants for insurance, because it aids the insurer materially in determining whether the proposed risk is one which it ought to assume, and, in the absence of any stipulation in a policy as to the effect of a false answer, it is one which the insured should answer fully and frankly. In the present instance the question was so framed as to direct the attention of the deceased to any negotiations which he had previously entered into with any other company or agent relative to insurance on his life, and the inquiry was in no respect obscure or misleading. He was asked if he had made any proposal or application for insurance to any company or agent upon which a policy had not been issued, and he was further cautioned to "state full particulars," etc. This question must have reminded him of his negotiations with the Mutual Reserve Fund Life Association, which had taken place less than five months previously; and, as he was a man of considerable business experience, we must presume that he was well aware that the insurer would regard information concerning the nature and result of those negotiations as of great importance if it was fully advised thereof. Moreover, we are of the opinion that most persons of ordinary insight would have assumed from the nature of the interrogatory

that it was propounded for the purpose of eliciting information concerning such negotiations as the deceased had had with the Mutual Reserve Fund Life Association, and that such information ought not to be withheld. From this point of view, we accordingly conclude that the deceased answered the question that was propounded to him in such a way as to conceal material facts, which, as he well knew, the insurer wished to ascertain and intended to elicit by means of the interrogatory. In other words, he did not exercise that degree of good faith which a person in his situation ought to have exercised. Vose v. Insurance Co., 6 Cush. 42, 48.

It is urged, however, in effect, that the answer was technically true, even if it did operate to conceal information which the insurer wished to obtain, and that, if it was technically true, the defense pleaded is of no avail. We are of opinion, however, that the answer was not even technically true. A person makes a proposal for insurance to an insurance company or its agent when, with a present purpose of taking out a policy for a certain amount, he goes before the company's agent, and makes his purpose known, and tenders himself for such an examination as the company may elect to make before it decides to accept the risk. Such examination of the applicant as the company may choose to make before it accepts the proposal is for its own information and benefit, and is conducted by its own agents. A proposal for insurance naturally precedes the examination of the applicant. It is the act of the applicant which induces an examination of the proposed risk. The insurer may accept the proposal when made, without inquiry as to the applicant's physical condition or family history; or it may subject him to an examination in these respects which is more or less rigid. The proposal for insurance is, in a legal sense, made when the applicant announces his willingness and desire to take out a policy of a given kind and amount at a specified rate of premium, and when he tenders himself for such an examination as the insurer desires to make. We perceive no sufficient reason, therefore, for saying that a person has not made a proposal for insurance either to a company or its agent if it so happens that, after submitting himself to an examination with a view of obtaining a policy, he is asked concerning some fact which he wishes to conceal, or if he is requested to submit his person to some physical test which he is unwilling to undergo, and for such reason the examination is interrupted, and negotiations are broken off. At all events, it should not be held that the acts aforesaid do not constitute a proposal for insurance when the applicant subsequently seeks insurance from some other company, and is asked by that company whether he has previously made a proposal for insurance to any other company or agent upon which a policy has not been issued. To insure the exercise of good faith and to avoid deception, when a question of the latter sort is propounded to an applicant for insurance, the word "proposal" should be held to include negotiations with other companies that were broken off because the applicant, after seeking insurance in the customary way, at some point in the course of the medical examination declined to submit

to some test which was deemed necessary to ascertain his physical condition. Unlike some inquiries which are usually found in applications for insurance, questions of the kind last referred to call for important information which the applicant is able to impart, and ought to make known to the insurer. Such questions should be construed liberally and fairly, so as to compel an applicant for insurance to disclose information which the insurer is clearly entitled to, and seeks by such means to obtain. It is obvious, we think, that Webb would have made a proposal for insurance if, when he applied to the agent of the Mutual Reserve Fund Life Association, he had been informed that the company would not entertain his proposal, and if no written documents had been made out or signed. What was in fact done was likewise a proposal for insurance, although the medical examiner's report was not as complete as he would have made it if Webb had furnished a sample of his urine.

The views which we have expressed are supported, as we think, by the authorities. In the case of Edington v. Insurance Co. (which was twice before the court of appeals of the state of New York,—77 N. Y. 564, 100 N. Y. 536, 3 N. E. 315), a person applied to the agent of an insurance company for insurance upon his life, and, as in the case at bar, filled up and signed the application which the agent of the company was authorized to reduce to writing and attest. The agent and the applicant then went to the office of the medical examiner, but, not finding him in, no examination was made. The agent subsequently went to the medical examiner alone, with the application which had been delivered to him, and was advised by the medical examiner that, having attended the applicant professionally, he was aware that the applicant was not insurable, and that it was useless to examine him. The application, which had been reduced to writing by the agent, was thereupon destroyed, and the negotiation ended without any formal examination. The court ruled that these facts established conclusively that an application for insurance had been made, within the purview of a question propounded by another company, to whom the same person subsequently applied for insurance, as to whether an application for insurance had ever been made by him to another company. It was further decided that the medical examination "was not part of the application" for insurance, within the meaning of that term as employed in the interrogatory, but was something to be done for the company by its own agent after the application was made. See. also, Finch v. Modern Woodmen of America (Mich.) 71 N. W. 1104; Ferris v. Assurance Co., 118 Mich. 488, 76 N. W. 1041; Kelly v. Clearing Co., 113 Ala. 453, 21 South. 361; Bruce v. Insurance Co., 74 Minn. 310, 77 N. W. 210. In the case at bar it appeared, as heretofore stated, that the application which was made by Webb to the agent of the Mutual Reserve Fund Life Association was completed and signed by the deceased, and that it was transmitted to the association by the agent according to the usual course of business; also that the only other document which the applicant was required to sign was completed and signed and attested by the medical examiner a week or two before the ap-

plicant refused to furnish a sample of his urine for examination. That was needed, as it seems, to enable the medical examiner to complete the report which he was directed to make. We are of opinion, therefore, that prior to the applicant's refusal to furnish a sample of his urine he had made a proposal and an application for insurance, both to the Mutual Reserve Fund Life Association and to its agent, and that at the date of such refusal the proposal was then pending before the company, and undetermined. And, even if it be conceded that such refusal was tantamount to a withdrawal of his proposal, although it was withdrawn in no other way, yet such withdrawal of the proposal does not alter the fact that one had been made, and that the applicant's statement to the contrary was, in substance and in legal effect, untrue.

The other defenses mentioned above which were interposed by the defendant company have far less merit, and are not entitled to as much consideration. For the purpose of showing Webb's statements to the effect that it had been six months since he was attended by a physician, and that the difficulty at that time was a "slight attack of indigestion," the defendant offered in evidence an application for insurance that had been made by Webb to the Bankers' Life Insurance Company on April 16, 1897, in which he answered the questions when he had last consulted a physician, and for what, as follows: "Last January (1897). La Grippe. Sick 2 days." This application, when offered, was excluded by the trial court, and an exception was taken. To sustain the plea that an untrue answer was made to the question propounded by the defendant company as to whether any physician had ever given an unfavorable opinion upon his life with reference to insurance, the defendant company seems to have relied wholly on the opinion (if one was expressed) which may be extracted from the letter and communication of Dr. McLauthlin to Dr. Bowden, heretofore quoted, although it does not appear that the deceased was acquainted with the contents of either of those documents when his application to the defendant company was made. In the written argument with which we have been favored counsel for the plaintiff in error have not thought proper to urge either of the two defenses last mentioned, and apparently they do not regard them as of much importance. We do not perceive any such substantial disagreement between the statements made to the Bankers' Life Insurance Company and to the defendant company as would justify a court in declaring the policy in suit void, even if a jury should find that the statement made to the Bankers' Life Insurance Company was of the two the more accurate, and that the attack of indigestion which is spoken of in the application to the defendant company was in reality occasioned by the grippe. We should not feel disposed to reverse the judgment of the trial court because of its action with reference to either of the two last-mentioned defenses if its action with reference thereto was the only error which the record discloses. It erred, in our judgment, in instructing the jury to find for the plaintiffs upon the theory that there was no evidence which tended to show that Webb's statement that he had not

made any proposal or application for insurance to any other company or agent was an untrue statement. There was evidence to that effect, as heretofore shown, and undisputed testimony which disclosed that one statement made by the applicant was false. It is accordingly ordered that the judgment below be reversed, and that the cause be remanded for a new trial.