CORIE E. NEWTON v. SOUTHWESTERN MUTUAL LIFE ASSOCIATION, Appellant.

Insurance: ESTOPPEL: *Receipt of premiums.* Where the president of the company agreed that the assured's insurance premium might be paid in monthly installments, and defendant actually received such installment and gave proper credit therefor, it was estopped from contending that there was a forfeiture of the policy for non-payment of premiums prior to a given day.

NOTICE: *Forfeiture—Estoppel.* Defendant's articles of association, which were a part of its contract with assured, required it to give thirty days' notice of delinquent insurance premiums before declaring forfeiture of the policy. The premiums on decedent's policy became due April 26th, and due notice was given prior to that date, but an agreement was effected with defendant's president, by which the premium was to be paid in monthly installments. One installment was paid, and defendant agreed that the policy should remain in force until May 26th. *Held*, that though no further payment was made before the latter date, defendant could not declare the policy forfeited without giving thirty days' notice.

*Reliance.* The contention that the persons who had undertaken to pay the monthly installments for the assured knew, without further notice, that the policy would be forfeited if they were not paid was untenable since they had the right to rely on the condition that thirty days' notice of forfeiture would be given.

FALSE REPRESENTATIONS: *Strict construction against forfeiture.* In decedent's application for insurance in defendant company, he was asked, "Has any company ever declined to grant insurance on your life?" To which he answered in the negative. The evidence showed that on a similar application for membership in a lodge he was asked, "Have you ever been rejected for life insurance? If so, state when, name of company or order." To which he answered, "Yes, Modern Woodmen of America; one year ago." *Held*, that, since there is a clear distinction between life insurance companies and life insurance associations, and the question asked by defendant referred only to insurance companies, decedent's answer was not false.

*Same.* In an action on the policy, under such circumstances it was proper to exclude as immaterial the testimony of defendant's medical director that he would not have approved the application had he known of decedent's rejection by such lodge.

*Same.* It was proper to exclude evidence on the issue of fraud, since the answer not being false, there was no evidence of fraud, and that question was not in the case.

New Trial: NEWLY DISCOVERED EVIDENCE: *Must be material.* Where the newly-discovered evidence relied on by an insurer as ground for a new trial in an action where the defense was non-payment of premium before May 26th, which fell due on April 26th, whereupon a thirty-day forfeiture notice was given, and an arrangement made for payments in monthly installments, one installment being received, related to the question

of the assured's intention as to making a second payment on May 26th, the motion was properly overruled, his intention in that regard being immaterial.

*Appeal from Marshall District Court.*—HON. OBED CASWELL, Judge.

FRIDAY, APRIL 11, 1902.

ACTION on policy of life insurance. On motion of plaintiff a verdict was directed in her behalf, and from the judgment thereon defendant appeals.—*Affirmed.*

*J. L. Carney* for appellant.

*C. H. Van Law* for appellee.

McCLAIN, J.—An annual premium on the policy of insurance on which this action was brought became due on the twenty-sixth of April. Thirty days before that time the officers of defendant had, in accordance with the provisions of the articles of the association, mailed to the insured notice of this premium, and that if not paid the policy would become forfeited. But prior to April 26th a friend of the insured (the latter being at that time in poor health) had a conversation with the president of the defendant association, in which it was agreed that the premium on the policy might be paid in monthly installments, and in accordance with this arrangement payment of one-twelfth part of the annual premium was made and accepted by the officers of the defendant, in consequence of which it was agreed that the policy should remain in force until May 26th. No further payment being made before the latter date, the defendant association, without further notice, declared the policy forfeited, and notified the assured to that effect. Further tender of payment was refused, and soon afterwards the assured died. Under

this state of facts, which may be regarded as established by the evidence without controversy, it is contended for the defendant that the court erred in directing a verdict for the plaintiff, insisting, on the other hand, that the court should, as asked by the defendant, have directed a verdict in its behalf.

The contract of insurance contains two references to the matter of giving notice of payments of premiums to come due, failure to make which will operate as a forfeiture of the policy. In the defendant's articles of association, which are made a part of the contract, it is stipulated that "a notice will be sent to each member at their address as the same appears of record in the home office, thirty days prior to the date their insurance becomes delinquent, and a member who shall fail to pay his premium on or before 12 o'clock m. of the last day of the term paid for as shown by the books of the association, or shall fail to pay any note for premium, or any part of premium in cash at maturity, shall be suspended, and his certificate of membership and policy of insurance shall become null and void." In the application, which is also made a part of the contract, it is declared that "any omissions or neglect to pay the premium when due, or within thirty days from date of notice," shall render the policy null and void. Had there been no arrangement varying the terms of the contract, the failure to pay the entire annual premium, or any portion thereof, on the twenty-sixth day of April, would have caused the policy to become forfeited, the 30 days' notice required by the contract having been given. But a new arrangement was made by which the right to exact the full annual premium was waived, and the policy was continued in force until the twenty-sixth day of May, on the payment of one-twelfth of the annual premium. It is contended, on behalf of plaintiff, that there was therefore no default until the twenty-sixth day of May, and that, as no 30 days' notice was given that the policy would be

forfeited on that date unless a further payment was made, the subsequent declaration of forfeiture by defendant was unauthorized. To meet this contention it is urged for defendant, first, that there was no consideration for the agreement to accept the premium in monthly installments instead of annual installments; but we see no merit in this claim. Certainly, if the proper officer of the assocation agreed that the premiums should thereafter be paid monthly, such agreement would be binding on the company by way of estoppel, and the authority of the president to make such agreement cannot be called in question for the reason that the company did actually receive one monthly installment and gave the insured credit therefor. That this action on the part of the association estops it from contending that there was any forfeiture before the twenty-sixth day of May is too clear to require further argument. Secondly, the contention is made that this extension for 30 days was a mere privilege, and that failure to comply with the terms of the extension by paying a second monthly installment operated as a forfeiture of the policy without further notice. But this contention is not in harmony with the terms of the contract. No matter what the ground of forfeiture, the policy was legally in force until the twenty-sixth day of May, and it could be forfeited on that day, or afterwards, by the defendant only on the giving of 30 days' notice as provided in the articles of incorporation and the terms of the contract set out in the application. This is the plain meaning of the language used in the contract. The forfeiture, if it occurred, would be by reason of the failure to pay some premium or part of a premium due on that date, and until 30 days' notice was given that the policy would be forfeited on account of the failure to make payment, the defendant had no power to declare such forfeiture. The terms of the contract are too clear on this point to leave any room for discussion, and the cases cited by appellant are for that reason not in point. It is undoubtedly true that in the absence of any statutory regula-

tion the parties may, by their contract, make a future failure to pay a premium, or a portion of a premium, or a premium note at a specified time, operate *ipso facto* as a forfeiture of the contract; but this contract imposes a condition that such forfeiture shall not take place until after 30 days' notice, and such notice was not given. · Thirdly, it is contended for the defendant that those who had undertaken to pay these monthly installments for the assured knew, without further notice, that the policy would be forfeited if such installments were not paid, and therefore that the notice would have been useless; but, again, this contention is not in accordance with the terms of the contract itself. The assured, or those acting for him, had the right to rely on the condition that 30 days' notice of forfeiture would be given; and there is nothing to indicate waiver by the assured of this condition. It seems plain, therefore, that the defendant association had no right to forfeit the policy for failure of the assured, or those acting for him, to make further payment on the twenty-sixth day of May.

Another defense on the part of the association was that assured had made a false answer to a question in his application, in which he was asked, "Has any company ever declined to grant insurance on your life?" To which his answer was, "No." The only evidence that this answer was false consists in the answer by the assured to a similar question in an application for membership in the Sovereign Camp of Woodmen of the World. The question was, "Have you ever been rejected for life insurance? If so, state when, name of company or order." The answer was, "Yes, Modern Woodmen of America; one year ago." It seems to be conceded that if this answer was correct, then it sufficiently appears that prior to the answer made in the application to the defendant association, the insured had been rejected on an application for membership in an insurance association known as the Modern Woodmen of America. It is to be no-

ticed, however, that the inquiry in the application to defend-
ant was as to "any company?" while the inquiry in
the other case was whether the appellant had "ever
been rejected for life insurance," and the inquiry
further specifies, in "any company or order."    Now
it may well be that the insured did not regard the inquiry
with reference to "any company" as applying to insurance
in a fraternal order.   The insured himself seems to have
made this distinction, and we are of the opinion that he was
justified in doing so.-  Where an insurance company or as-
sociation seeks to avoid a policy or certificate of membership
on the ground of falsity in answer to a question which is by
the terms of the contract made material, the court will con-
strue the question and answer strictly as against the company,
and liberally with reference to the insured.    *Stewart v. As-
sociation,* 110 Iowa, 529.   If any construction can reason-
ably be put on the question and the answer such as will avoid
a forfeiture of the policy on the ground of falsity of the an-
swer, that construction will be given, and the policy will be
sustained.   A clear distinction between life insurance com-
panies and life insurance associations is recognized in the pro-
visions of the Code relating to life insurance.   See sections
1768, 1784, 1799.   The defendant cannot complain if the
insured, having that distinction in mind, failed to disclose
an application for insurance in an insurance association,
when it has asked him only with reference to applications in
insurance companies; and the distinction is sufficiently recog-
nized in common usage to justify the assumption that assured
had it in mind when he made the answer to the question
asked him.   Counsel for defendant seem to think that this
distinction is altogether too technical to be recognized by
the court, but we do not think so.   It would have been per-
fectly simple and easy to have asked the question in a
broader form, had it been desired that a comprehensive an-
swer be given.   When an applicant for insurance answers
categorically the questions asked, and his answers are cor-
rect in any view of the question which can be reasonably ta-

ken, then the insurance company or association, as the case may be, ought not to be allowed to escape its liability on the ground that the answer is false. We do not discuss the question whether, under Code, section 1812, which makes the physician's certificate conclusive, in the absence of fraud, as to the condition of health of the assured at the time such certificate was given, the insurance company or association can set up falsity of an answer with reference to previous applications for insurance to avoid the policy. In response to the argument that the falsity of this answer constituted fraud, it is enough to say that, inasmuch as we have found that the answer was not false, no fraud can be predicated upon it. So far, therefore, as the evidence was based on the falsity of the answer in question, the lower court did not err in directing a verdict for the plaintiff, and in refusing to direct a verdict for the defendant. Nor is the assignment of error, based on the exclusion of the testimony of the medical director of defendant that he would not have approved the application had he known of the rejection of the applicant as a member of the Modern Woodmen of America, well taken; for, if the answer complained of was not false, then it is wholly immaterial what the action of the medical director would have been had he known of facts not inquired about in the application. The same consideration disposes of other assignments of error with regard to the rejection of evidence on the issue of fraud. If there was no false answer, then there was no evidence of fraud, and that question is not in the case.

Complaint is made of the overruling of a motion for new trial on the ground of a showing of newly discovered evidence; but the evidence referred to related to the question of the intent of the insured as to making a payment on the twenty-sixth day of May, and that was wholly immaterial. It is of no consequence to determine whether, if the 30 days' notice had been given with reference to that payment, the assured would have allowed the policy

to become forfeited. The giving of the notice was a condition of the forfeiture, and it is not for the company to say that it would have been ineffectual.

The views we have indicated dispose of every assignment of error which is argued, and the judgment of the lower court must be AFFIRMED.