[L. A. No. 1500.  Department One.—January 17, 1906.]

## LAURA C. LYON, Respondent, v. UNITED MODERNS, Appellant.

MUTUAL BENEFIT SOCIETIES—ACTION BY BENEFICIARY—MOTION FOR NON-SUIT—SUPPLY OF PROOF BY DEFENDANT.—In an action by a beneficiary upon a certificate of membership in a mutual benefit society, a motion for a nonsuit on the ground that plaintiff had not shown that satisfactory proof has been made to defendant of her right was waived where defendant did not rest its right upon denial of the motion, but introduced the proofs of death and of plaintiff's right, which were made by plaintiff on blanks furnished by defendant.

ID.—"SATISFACTORY PROOF" — CONSTRUCTION OF CERTIFICATE — PROOFS REQUIRED.—A certificate requiring "satisfactory proof of the death of the member, and of the identity and right of claimant and of the validity of the claim," cannot be reasonably construed as requiring a showing as to the validity of the certificate, or that there must be such a showing as to reasonably satisfy defendant's officers that defendant had no good defense against the claim on the ground of misrepresentation.  Proof of death and proof of the claimant's right and identity to such benefit as was stipulated by the certificate were the only requisites.

ID.—SHOWING OF DEFENSE—SUFFICIENCY OF PROOFS NOT AFFECTED—BRINGING OF ACTION NOT BARRED.—If the proof showed facts of which defendant might avail itself as a defense to an action on the certificate, this would not derogate from the sufficiency of the proofs either of death or of the claimant's right and claim, or bar the bringing of an action on the certificate.

ID.—MISREPRESENTATION — DISEASE OF PLEURISY — EVIDENCE OF MERE TOUCH.—Evidence of a mere touch of pleurisy in connection with the disease of "la grippe" reported to the medical examiner, which disappeared with it, would have warranted the jury in finding that there was no misrepresentation in the statement that there was no disease of pleurisy.

ID.—TRUE STATEMENT TO MEDICAL EXAMINER—EVIDENCE—NEGLECT OF EXAMINER—INSTRUCTION.—The court properly allowed the plaintiff to prove that the insured made a true statement to the medical examiner that he had the "grippe" and a slight attack of pleurisy; and where there is no pretense that he had actual knowledge of the contents of the report, but was merely asked to sign the statement at the end thereof, the court properly instructed the jury that if he had had the disease of pleurisy, and answered "No," it would be a misrepresentation of a material fact which would avoid the policy, but that if he told the true facts to the medical examiner, and he neglected or omitted to write the answer in his report, the insured

was not responsible for such omission or neglect unless he had actual knowledge that the answer had been imperfectly or incorrectly written.

ID.—ESTOPPEL OF COMPANY.—Where the insured, in good faith, makes truthful answers to the questions contained in the application or medical examination, but his answers, owing to the fraud, negligence, or mistake of the agent of the company in filling it out, are incorrectly transcribed, the company is estopped to assert their falsity as a defense to the policy.

ID.—QUESTION AS TO PRIOR REJECTION BY INSURANCE COMPANY—REJECTION BY BENEFIT SOCIETY NOT INCLUDED.—Where a negative answer was given to a question as to any prior rejection of an application to "any company" to insure his life, the question and answer do not include a prior rejection of an application for a benefit certificate in another benefit society. The court will construe the question and answer in such case strictly against the insurer, and liberally in favor of the insured; and if any construction can reasonably be put upon them such as will avoid a forfeiture on the ground of the falsity of the answer, that construction will be given, and the insurance sustained.

ID.—BURDEN OF PROOF — REQUESTED INSTRUCTION — ASSUMPTION OF FACT—DEFENDANT NOT PREJUDICED.—The refusal of a requested instruction, that the burden of proving the fact that the insured had pleurisy was communicated to defendant rested upon the plaintiff, was properly refused, as assuming a fact which it was the province of the jury to decide; and under the circumstances shown by the record the defendant could not have been prejudicially affected by the absence of an instruction as to where the burden of proof rested to show the facts constituting an estoppel in the respect designated.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial. M. T. Allen. Judge.

The facts are stated in the opinion of the court.

J. W. McKinley, for Appellant.

Frank James, and Bernard Potter, for Respondent.

ANGELLOTTI, J.—This is an appeal from an order denying defendant's motion for a new trial, in an action brought by plaintiff to recover on a benefit certificate of membership of her deceased husband, issued by defendant corporation. Defendant is one of the many fraternal mutual beneficial associations existing in this country which pay benefits to

the beneficiaries named in the certificate of membership, upon the death of a member, in such amount as may be set forth in the certificate. Deceased became a member of one of the subordinate lodges of defendant in September, 1901, when a. certificate of membership was issued, under the terms of which it was agreed that three thousand dollars should be paid plaintiff within ninety days after "satisfactory proof of the death of said member, and of the identity and right of claimant and of the validity of the claim," provided, of course, that such certificate remained in force at the time of his death. Deceased died December 29, 1901. It was in effect admitted on the trial that the certificate was in full force at the date of his death, if it was not void in its inception by reason of alleged misrepresentations made by the deceased in his application for membership.

1. The first point made by defendant for a reversal of the order is that the court erred in denying its motion for a nonsuit, made at the close of plaintiff's evidence, upon the ground that plaintiff had not shown that satisfactory proof had been made to defendant of her right or the validity of her claim. Without considering the question as to whether the admissions made by defendant in its answer and its stipulation at the commencement of the trial sufficiently showed such compliance with this requirement as was necessary to make a *prima facie* case for plaintiff, we think there is nothing in the point made. Defendant did not rest its case upon the denial of the motion for nonsuit, but introduced evidence in its own behalf. So far as the evidence introduced by defendant supplied any defects in plaintiff's proof, any error in denying the motion for nonsuit was waived. (*Scrivani* v. *Dondero,* 128 Cal. 31, 32, [60 Pac. 463] ; *Russell* v. *Pacific Can. Co.,* 116 Cal. 527, 530, [48 Pac. 616] ; *Schlessinger* v. *Mallard,* 70 Cal. 326, 334, [11 Pac. 728].)

Defendant introduced in evidence the proofs of death which were in fact made. These proofs were made on blanks furnished by the defendant, and, in accordance with the laws of defendant, by officers of the subordinate lodge of which deceased was a member, and, concededly, *prima facie* fully established the rights of plaintiff to payment, except for one reason. The proofs were written on forms prepared

by the defendant for that purpose, and in answer to certain questions propounded thereon, the claimant and physician stated that deceased had nearly one year before making his application for membership been treated by a physician "for cold and a slight touch of pleurisy," while in the medical examiner's report, which was made a part of his application for membership, in answer to a question as to whether he had ever had any of forty-five enumerated "diseases," including "pleurisy," the answer, "No," had been written after each named disease. Concededly, by virtue of certain provisions of the contract, the certificate was void, if the deceased had in his application made material misrepresentations in his answers to the questions propounded on the application blank. It is now claimed that the blank showed such a misrepresentation, and that hence the proofs furnished as to the validity of the claim were not "satisfactory." The real point thus appears to be that, under the terms of the certificate, no action could be maintained by plaintiff on this certificate, until she made to the company such a showing as ought reasonably to satisfy defendant's officers that the defendant had no good defense against the claim on the ground of misrepresentation made in the application for membership. We are satisfied that the contract required no such proof on the part of the claimant as a prerequisite to the maintenance of an action. The words "and of the identity and right of claimant and of the validity of the claim" all have reference solely to her claim that she is the beneficiary named in the certificate, and entitled to recover thereon if the certificate was in force at the death of the insured, and cannot reasonably be construed as requiring a showing as to the validity of the certificate issued to the deceased   Proof of death and proof of the claimant's right and identity to such benefit as was stipulated by the certificate were the only requisites. If the proof showed facts of which defendant might avail itself as a defense to an action on the certificate, this would not derogate from the sufficiency of the proofs in either respect, or bar the bringing of an action. (*Insurance Co.* v. *Rodel*, 95 U. S. 232-237.)

2. The medical examiner's report showed, as already indicated, the answer "No" to the question: "(3) Have you ever had any of the following diseases? Answer yes or no in

each space, and give particulars under the head of remarks:
. . Pleurisy.'' Some forty-five so-called diseases were here
enumerated. It further showed the following question and
answer, viz.: ''(6) Have you consulted or been advised by
any physician regarding your health within the last five
years? If so, whom, when, and for what ailment? A. Grippe,
1900. Dr. La Doux.'' It appeared from the evidence that
all the answers in this very lengthy report were written by
the medical examiner of defendant in the presence of the
applicant, and as the result of his inquiry of the applicant,
and that the applicant was then called upon to sign, and did
sign, a statement at the end, to the effect that he warranted
the ''answers as written to the above questions put by the
medical examiner are full, complete, and true, and the same
shall be made a part of the herein referred to application for
membership.'' In the application proper was a similar war-
ranty followed by this statement: ''And I do hereby ac-
knowledge and consent and agree that any untrue statement
made herein by me or on my behalf, or to any medical ex-
aminer, whether written by my own hand or not, or any
concealments of facts by me or any one else, shall forfeit
and cancel all rights to any benefit under the above-named
application.'' The certificate recited that it was issued ''in
consideration of the statement made in the application for
beneficiary certificate, and in answer to questions asked in
the medical blank (the truth of which said member guaran-
ties).'' There was evidence tending to show that during, or
while convalescing from, the attack of ''grippe'' referred to
in the medical report, the deceased had a pleural pain ''not
so very, very severe,'' the attending physician testified, ''but
a little touch of pleurisy.'' The physician further testified
that there was not much inflammation, hardly any fever, that
it was not ''regular pleurisy,'' just ''the very first symp-
toms of pleurisy,'' and ''it terminated there'' at once. The
evidence in regard to the matter is such that a jury might
well have been warranted in concluding that the applicant
had never had the ''disease'' of ''pleurisy'' within the
meaning of the question relative thereto, and that the
written answer was therefore not false. But, in view of
evidence admitted and instructions of the trial court, we
are not able to determine that they so concluded. The

plaintiff was allowed, over defendant's objection, to show what took place between the medical examiner and the applicant at the time the medical report was written. Under this ruling plaintiff testified that all the medical examiner asked the applicant as to diseases was whether "he had ever been sick any," and that the applicant answered that he had never had anything but smallpox and typhoid fever, "until January, 1901, he had the grippe and a slight attack of pleurisy," and that the examiner did not say anything, but simply apparently wrote down the answers. The only other testimony regarding this interview was that of the examiner, who admitted that plaintiff was present during at least a portion of the interview, and who said he had no recollection of the applicant saying anything about pleurisy, and that he could not say as to whether he asked the applicant as to each of the diseases enumerated on the blank; that it was his custom so to do, and always to write down the full reply.

Upon this matter the court instructed the jury in effect that if the applicant had prior to the application been afflicted with the disease of "pleurisy," and that when asked whether he had ever had such disease answered "No," his statement would be a misrepresentation of a material fact, which would avoid the policy, and that if, on the other hand, he told the examiner that he had "an attack, slight or otherwise, of pleurisy, and the medical examiner either neglected or omitted to write the answer in his report," the insured was not responsible for such omission or neglect, unless he had actual knowledge of the fact that the answer had been imperfectly or incorrectly written. There was no pretense that he had any actual knowledge of the contents of said report, or that he had been asked to read the same, or to do anything but sign his name to the statement at the end thereof. There was no error in the action of the court in admitting this evidence, or in giving this instruction.

In Cooley's Briefs on the Law of Insurance (vol. 3, p. 2594) it is said: "From an examination of the cases the following propositions may be regarded as established by the weight of authority: Where the insured, in good faith, makes truthful answers to the questions contained in the application, but his answers, owing to the fraud, mistake, or negligence of the agent filling out the application, are incorrectly transcribed,

the company is estopped to assert their falsity as a defense to the policy. The acts of the agent, whether he is a general agent with power to issue policies, a soliciting agent, or merely medical examiner for the company, are in this respect the acts of the company, and he cannot be regarded as the agent of the insured, though it is so stipulated in the application or policy.''

An examination of many of the authorities satisfies us that while there is some conflict in the cases on some of the matters included in this statement, the great weight of authority is with the statement as a whole, where the insured acts in good faith and is himself without fault. This court has already indicated its support of the rule enunciated. In *Menk* v. *Home Ins. Co.*, 76 Cal. 50, 53, [14 Pac. 837, 18 Pac. 117, 9 Am. St. Rep. 158], a fire insurance case, it said: ''The only point in the offered testimony was that if the agent, knowing all the essential facts, made out the application for plaintiff, the company cannot take advantage of defective statements contained in it as not complying with the requirements of the company, nor would misstatements be fatal to the claim of plaintiff which the agent well knew to be false when he made out the application, received the money of the applicant, and issued the policy. The tendency of the decisions is plainly to hold all these conditions waived which, to the knowledge of the agent, would make the policy void as soon as delivered. Otherwise the company would knowingly receive the money of the applicant without value returned, and the whole transaction would be a palpable fraud.'' (See, also, *Wheaton* v. *North British etc. Co.*, 76 Cal. 415, 419-421, [18 Pac. 758, 9 Am. St. Rep. 216]; *Maxson* v. *Llewelyn*, 122 Cal. 195, 199, [54 Pac. 732]; *Bayley* v. *Employers' etc. Corp.*, 125 Cal. 345, 349, [58 Pac. 7]; *Parrish* v. *Rosebud etc. Co.*, 140 Cal. 635, 645, [74 Pac. 312].) In *Maxson* v. *Llewelyn*, 122 Cal. 195, [54 Pac. 732], it is pointed out, quoting approvingly from *Union etc. Co.* v. *Wilkinson*, 13 Wall. 222, that this principle does not admit oral testimony to vary or contradict that which is in writing, but it goes upon the idea that the writing was procured under such circumstances by the other side as estops that side from using it or relying on its contents—not that it may be contradicted by oral testimony, but that it may be shown by such testimony that it cannot be lawfully used against the

party whose name is signed to it. The rule is as applicable to life and accident insurance as it is to fire insurance, and, where the applicant is not a member until after the making of his application, to mutual fraternal societies as it is to what is known as "regular insurance."

3. On the application proper the answers to the printed questions were written by an officer of defendant, and the paper, when so completed, was handed to the applicant for signature and signed by him. The following question was contained thereon, viz.: "(7) Has any proposal or application to insure your life ever been made to any company, or agent, or medical examiner, upon which a policy has not been issued? If so, state full particulars." The written answer was "No." The defendant sought to show that in December, 1900, deceased had applied for membership in, and a death-benefit certificate from, the "Woodmen of the World," a well-known fraternal association, which, as a part of its plan, issued death-benefit certificates similar in all particulars material to the question here presented to those of this defendant, and that his application had been disapproved by the "head physician" of the order, and no certificate had ever been issued thereon. The trial court sustained the objection made to all such testimony, and this ruling is assigned as error. We are of the opinion that the "Woodmen of the World" was not a "company," within the meaning of the question on the application blank, and that therefore the offered evidence was not material. There is some conflict in the cases as to whether a question of the general character of the one under consideration should be held to refer to any organization other than regular insurance companies, or whether it also includes fraternal associations organized for the purpose of mutual protection and relief of its members and for the payment of stipulated sums of money on the death of the members; but where the question stated on the application blank is as uncertain in its terms as the one under consideration the better reasoning appears to be in favor of excluding all except regular insurance companies.

It must be recognized that the rule applicable in the construction of insurance contracts of construing the contract in favor of the assured and against the insurer, where it is

reasonably susceptible of such construction, is applicable in such cases, and therefore, as said in one of the cases, "where an insurance company or association seeks to avoid a policy or certificate of membership on the ground of falsity in an answer to a question which is by the terms of the contract made material, the court will construe the question and answer strictly as against the company, and liberally with reference to the insured," and, "if any construction can reasonably be put on the question and the answer such as will avoid a forfeiture of the policy on the ground of falsity of the answer, that construction will be given, and the policy will be sustained." (*Newton* v. *Southwestern Mut. Life Assn.*, 116 Iowa, 311, [90 N. W. 73].) The law of this state recognizes a distinction between regular insurance companies and such associations, which are not conducted for profit, by declaring the associations "not to be insurance companies in the sense and meaning of the insurance laws of this state," and exempting them from the provisions of such insurance laws (Civ. Code, sec. 451; *Marshall* v. *Grand Lodge*, 133 Cal. 686, 691, [66 Pac. 25]); and there is such a difference between the two classes as to reasonably justify one in concluding that an association or order of the class mentioned is not an "insurance company" within the general acceptation of that term. If this be so, the applicant here was justified in concluding that only regular insurance companies · were meant by the question, and we must construe the question as calling for nothing more. If the association wanted anything more, it would have been a simple matter for it to have framed the question on its carefully prepared blank in terms so precise and definite as to have left no room for doubt. Again, quoting from *Newton* v. *Southwestern Mut. Life Assn.*, 116 Iowa, 311, [90 N. W. 73]: "When an applicant for insurance answers categorically the questions asked, and his answers are correct in any view of the question which can be reasonably taken, then the insurance company or association, as the case may be, ought not to be allowed to escape its liability on the ground that the answer is false. (See, also, *Mutual Life Assn.* v. *Miller*, 92 Fed. 63, [34 C. C. A. 211]; *Pennsylvania Mut. etc. Co.* v. *Trust Co.*, 72 Fed. 413, [19 C. C. A. 286]; 3 Cooley's Briefs on the Law of Insurance, p. 2079.)

A contrary view of the matter has been taken by the New York court of appeals in *Alden* v. *Supreme Tent*, 178 N. Y. 535. [71 N. E. 104], where the question was, "Have you ever been rejected by any life-insurance company or association?" and also by the supreme court of that state. (*McCollum* v. *Mutual etc. Co.*, 55 Hun, 103, 8 N. Y. Supp. 249].) It will be observed that the question in the New York court of appeals case included the word "association" as well as "company," which might reasonably be held to indicate more to the applicant. In *Bruce* v. *Connecticut Mut. Life Ins. Co.*, 74 Minn. 310, [77 N. W. 210], the question was, "Has any company or association ever declined or postponed granting or receiving insurance on your life, either for any particular amount, or in any particular form" and it was held that the question included fraternal associations issuing death-benefit certificates. Here, again, the question was so unlike the one involved in this case as to present an entirely different question. We are of the opinion that where the question asked is materially the same as the one we are considering the other line of authorities is supported by the better reasoning.

4. Complaint is made that the trial court refused to give to the jury the following instruction, viz.: "The burden rests upon each party to establish by preponderance of evidence affirmative allegations of its pleadings. In this case the plaintiff claims that the fact that James B. Lyon had had pleurisy was communicated to defendant, and the burden rests upon plaintiff to show that such fact was communicated to defendant." Regardless of the question as to where the burden lay to show the facts constituting an estoppel, we are of the opinion that the court was justified in refusing the requested instruction, for the reason that it assumed a fact that under the evidence was in issue and for the jury to decide,—viz., that the applicant had suffered from the disease of "pleurisy." As we have already shown, the evidence was such as to warrant a conclusion that he had not had such disease within the meaning of the printed question, but had had only the first symptoms thereof—had only been threatened with the same. The question as to whether he had the disease was one of the questions submitted to the jury for decision by the charge of the court. The requested instruction in effect declared it to be a fact that the deceased had the disease, and

that the answer, as written on the medical examiner's report, was false. We are also satisfied that, under the circumstances shown by the record, the defendant could not have been prejudicially affected by the absence of any specific instruction as to where the burden of proof rested to show an estoppel in the respect designated.

5. Various other rulings of the trial court in the matter of instructions are complained of, but we find none that requires special mention. As to defendant's other requested instructions, so far as proper, they appear to have been fully covered by other instructions given, and those portions of the charge of the court that are complained of were in accord with the views we have already expressed in discussing the question as to the right of the plaintiff to show that the answers given by the applicant to the medical examiner were correct, and the question as to whether the "Woodmen of the World" was an insurance company within the meaning of the phrase used in the printed application.

The order appealed from is affirmed.

Shaw, J., and McFarland, J., concurred.

Hearing in Bank denied.