[No. 11750.   Department Two. — February 22, 1887.]

HERMAN KRUGER et al., Respondents, *v.* WESTERN FIRE AND MARINE INSURANCE COMPANY, Appellant.

Fire Insurance — Authority of General Agent — Waiver of Conditions. — The general agent of a fire insurance company, authorized to represent it and transact its business at a particular place, has power to waive the conditions inserted in a policy in favor of the company.

Id. — Waiver by General Agent — Representations at Time of Insurance. — A condition in a policy of fire insurance exempting the insurer from liability for loss occurring while petroleum is kept or used on the insured premises is waived, if the general agent of the insurer, having knowledge at the time the insurance was effected that petroleum was kept and used, consented thereto, and represented to the insured that such use would not vitiate the policy.

Id. — Waiver Continues during Renewals of Policy. — A waiver of certain conditions in the policy, made by the insurer at the time the insurance was originally effected, continues during the subsequent renewals of the policy.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial. .

The facts are stated in the opinion.

*S. C. Van Ness,* for Appellant.

*D. M. Delmas,* and *George Lezinsky,* for Respondents.

Foote, C.—This was an action to recover upon two policies of insurance. The cause was tried before a jury, who brought in a verdict in favor of the plaintiffs, upon which a judgment was rendered against the defendant for fifteen hundred dollars, costs, etc.

From that judgment an appeal is prosecuted.

From that record it appears that in the year 1881 Grant Lapham, the agent of the defendant in the county of Alameda, where the plaintiffs kept their stock of goods, was at the place of business of the plaintiffs, and

examined said stock, and that on the thirty-first day of August, 1881, after such examination, the defendant is- sued a policy of insurance upon the stock of goods thus examined by its agent.

The testimony of one of the plaintiffs with reference to the transaction was as follows:—

"Yes, sir; I did have a conversation with him [mean- ing Lapham].

"First, you know, we insured with another man. The agent came round and insured us. That was right be- fore the Fourth of July. He did not bring around the policy; he kept the policy. During the Fourth we did not have any policy at all. Right after the Fourth he brought it around. I said: 'You just bring it around now. There is no danger now.' That was before 'the danger is over now,' I says. 'You can keep it now.' He left it in the store; left it there over a week. I told him I would not accept it. Then during the week I read over the policy what he left there. It mentioned something about the coal-oil. During that time Mr. Grant Lapham came around, and said he wanted to in- sure us. I told him about this. He was a friend of mine. I told him about this that was in the policy. 'What is the use of insuring? We cannot get nothing if we burn out. Because it says there mentions about the coal-oil.' 'He says such a small amount as you keep, that won't be any matter. You don't keep any large amount.' I told him, All right; go on and insure us. Then he brought around the policy; so it was all right. We kept it."

It was further proved that upon the expiration of the policy thus issued in August, 1881, and at the expiration of each year thereafter, down to and including the issu- ance of the policies in suit, new policies in the same company upon the same description of goods were is- sued by defendant to plaintiffs.

No further conversations with any agent of the de-

fendant were proved, nor were any other policies than those in suit introduced on the trial.

It appeared in evidence that there was an indorsement on said policies as follows:—

" Not valid until countersigned by the regularly authorized agent at Oakland, Alameda County, Cal. Countersigned Oakland.                    GRANT LAPHAM."

The record further shows that during all the times that the policies sued on were in force, and at the time of the fire and loss in the complaint alleged, the plaintiffs kept, stored, used, and sold upon the premises in which the property described in the policies was during such time kept the products of petroleum, consisting of illuminating oils; that the said oils were kept in a ten-gallon tank, into which they were poured at the top, and from which, when required by customers, they were drawn through a faucet; that the premises were lighted with said oils in lamps; and that the fire alleged in the complaint was directly caused by the fall of one of the said lamps; that the tank in which said oils were kept was the same tank that had been used by the plaintiffs on said premises during all the times they had carried on business on said premises, and that it had during all of said times stood directly opposite within a few feet of the entrance to said premises, and in full view of every one who entered the same; that no other oils were kept by the plaintiffs on said premises, except those kept in said tank, and plaintiffs also used said tank for the purpose of filling the lamps used for lighting said premises.

The policies of insurance contained, among others, this clause:—

" C. This company shall not be liable for loss occurring while any of the following-named articles are kept, stored, or used in or on the premises herein described, any custom or usage of trade or manufacture to the

contrary notwithstanding, namely: petroleum and its products."

It will be seen that the plaintiffs, having kept petroleum and its products on the premises in question, although in small quantity, could not recover on the policies unless it should appear that the condition of the policy upon that subject had been waived by the company.

The acts and language of Lapham as above stated are not contradicted, nor is it disputed that he was the regularly constituted agent of the company resident at Oakland when the first policy of insurance was issued.

The policies sued on were unquestionably but renewals of that policy, and we think that an agent, so appointed and authorized as he was, was empowered to waive the condition of the policy, and we are of opinion that the plaintiffs were warranted from what he said and did in believing, and did believe, that such condition was waived. Lapham was the general agent of the company at Oakland, and authorized to represent it, make contracts of insurance, and transact its business at that place according to the practice and course of dealing of such corporations. He was authorized to make and did make the original contract of insurance; and the policies in suit, being but renewals of that, are to be affected by his acts as if they were the original contract. (*Miner* v. *Phœnix Insurance Company*, 27 Wis. 693, and cases cited.)

The agent of the defendant authorized to act for them, and by whose acts they were bound, knew when he countersigned and delivered the policy that it was absolutely void unless he had waived the condition of the policy, by means of the alleged existence of which the company now seeks to avoid the payment of the loss; that is to say, the agent and the company took the premium, and yet believed the policy was void. And the company now says: "At the time we took your premium your policy was void, although our agent told you it was not, and

induced you so to believe, yet you cannot recover of us the loss you claim, and you cannot be heard to state in evidence what our agent said, as that would be to vary the terms of a written .contract by parol testimony." This, we think, the company is estopped from doing. (*Woodruff* v. *Imperial Fire Insurance Company*, 83 N. Y. 140, and cases cited.)

The delivery of the contract and a breach of its condition were concurrent acts, if the defendant's theory of the case be correct, and at the moment the contract was entered into it was void, although the party effecting the policy on his goods paid then and there the premium, and was made by the agent to believe that the policy was valid, and the petroleum-oil clause waived. The defendant's contention is without force. In the language of a distinguished judge, "we would scarce expect two parties to go through so senseless an act" as is claimed to have been done by the defendant, "if the facts were known to each at the time; but would rather conclude that they had by words or act agreed that the condition should not be considered as binding." (*Van Schaich* v. *Niagara Fire Ins. Co.*, 68 N. Y. 436.)

We are of opinion that the evidence objected to was properly allowed to go to the jury; that their verdict was in accordance with the facts in evidence and the charge of the court, which last was not erroneous; that no prejudicial error is shown by the record; and that the judgment should be affirmed.

SEARLS, C., and BELCHER, C. C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment is affirmed.

Hearing in Bank denied.