[Civ. No. 14813. Second Dist., Div. One. Mar. 8, 1946.]

JOSEPH WILLIAM BYRD, Appellant v. MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION (an Association), Respondent.

Kenneth Sperry and James C. Webb for Appellant.

J. Edward Haley for Respondent.

David Livingston and Louis F. DiResta as Amici Curiae on behalf of Respondent.

WHITE, J.—By the instant action for declaratory relief, plaintiff sought a declaration of the rights and duties of the respective parties under a policy of health and accident insurance issued by defendant to plaintiff on November 6, 1942, pursuant to a written application made therefor on October 31, 1942. Such policy provided for the payment to assured of the sum of $100 per month in the event he should be disabled by accidental means and the further sum of $50 per month for hospital charges for a period of three months. Thereafter on May 31, 1943, while working at the Craig Shipyards in Long Beach, plaintiff sustained "a fracture-dislocation of the spine" resulting in total disability owing to paralysis of his lower extremities. At the time of the trial herein and for more than three months subsequent to his injury, plaintiff was confined in a hospital. Plaintiff notified his insurer of such injury and the resulting disability and made demand for payment of the indemnity provided by the insurance policy. Upon refusal of insurer to honor his claim, plaintiff instituted the instant action. Defendant insurer interposed an affirmative defense to the effect that said policy was issued entirely in reliance upon written answers to questions contained in the application for the insurance; that, while plaintiff was asked what injuries he had previously sustained, and what compensation, if any, he had received or was then receiving, he failed to disclose that he was being paid $22 per month by the United States Government on account of injuries he sustained in 1918 in World War I which consisted of a fractured left leg and a flesh wound of the right leg; and that had insurer known of such injuries and compensation, it would have refused to issue the policy in question.

At the trial plaintiff offered to prove the circumstances under which the application for insurance was signed, i. e.: "An advertising circular was received through the mail and the assured tore off a post card, mailed it in to the company in Los Angeles, a few days later the company representative by the name of H. D. Broughton came to the residence of the assured and the application was then filled out, all of the writing in the application except for the signature was in the handwriting of the representative Broughton, and in response to the question, 'Have you ever made any claim for or received indemnity on account of any injury or illness?', the assured replied that he had his index finger hurt on one

occasion and that he had received approximately $50.00 compensation from the California State Industrial Accident Commission or through them, and that when he was in the first World War he had sustained an injury to both of his legs, one being in the nature of a fracture and the other a bayonet wound, and that he had been receiving a pension . . . compensation from the United States Government in the rate of $15.40 for the first period and then after he married he had received $22.00 which amount he was receiving at the time the application was filled out; that he did not read over the application after it was filled out by the agent but merely signed his name, and that later the policy was received—sent to him through the mail." Plaintiff also offered to prove by the testimony of his wife, who was present at the time the application was filled out, "that the assured did make a full and complete statement of the fact that he had received these injuries in World War No. 1; that he pulled down his socks and showed his scars to the agent and told the agent about having received some compensation or pension from the United States Government, and that he completely described the nature of the injuries and the nature of the treatment which he had received; that the company's agent, in spite of these statements, wrote down . . . the questions and answers which appear in the application for insurance." It was stipulated that the compensation received by plaintiff from the government was in the nature of compensation benefits and not as the result of any war risk insurance; and that if called, plaintiff would testify that the injuries received during the war did not interfere with his work, and that when "the agent was there he rolled down his socks and showed the agent the scars and told the agent . . . how he had gotten them, and that they did not bother him in getting around at all."

The trial court denied plaintiff's offers of proof, sustained objections to the introduction of the above offered evidence and granted a motion to strike "as to all statements or testimony concerning statements made to the agent as not being binding upon the company, by virtue of paragraph 16 on the application for insurance, which is in Plaintiff's Exhibit 1."

The trial court found that by reason of plaintiff's failure to disclose that he was receiving compensation from the government, defendant was entitled to cancel the policy and refund the premiums paid by plaintiff and ordered judgment accordingly. Plaintiff prosecutes this appeal.

It is here urged (1) that the finding of the trial court with reference to appellant's alleged failure to disclose material information called for in the application for insurance is without substantial support in the evidence; (2) that the trial court erred in excluding evidence or the facts and circumstances surrounding the execution of the application; and (3) that the trial court erred in admitting evidence concerning the failure of appellant to disclose medical attention received by him in 1918.

The question and the answer around which the instant controversy revolves read as follows:

"11. Have you ever made claim or received indemnity on account of any injury or illness? Yes. If so, what companies or associations, dates, amounts and causes?

"1935. Right hand index finger hurt. Approx. three weeks; Approx. $50 total; California State Comp."

In addition, respondent directs attention to two other questions contained in the application and the answers made thereto by appellant, to wit:

"14. Have you ever received medical or surgical treatment or had any local or constitutional disease not mentioned elsewhere in this application? (Answer to each) No.

"16. Do you hereby apply to the Mutual Benefit Health and Accident Association for a policy to be issued solely and entirely in reliance upon the written answers to the foregoing questions, and do you agree that the Association is not bound by any statement made by or to any agent unless written herein; and do you hereby authorize any physician or other person who has attended or may attend you to disclose any information thus acquired? Yes.

"Dated at Bellflower, this 31st day of October, 1942.

"(Signature of applicant: Joseph W. Byrd."

An examination of the insurance policy to which a photostatic copy of appellant's application therefor is attached, reveals entirely inadequate space in which to give the details required by said question number 11.

In this connection, it is noteworthy that in the form entitled "Affidavit of Claimant as to Accident," wherein claim is made for benefits under the policy, in addition to the query as to whether the insured had made a claim "against any other company," as appears in the application for the policy, the direct question is asked in the affidavit supporting the claim for payments under the policy as to whether the insured

"ever received a pension or government compensation, and if so, how much and what for?" This last-named interrogatory does not appear in the application for the policy. It is equally noteworthy that the insured answered this last-named question fully and truthfully by stating that he had and was receiving $22 monthly from the United States Government because of "gunshot wound in World War I." Why such a direct and positive question as to government compensation was not asked in the application for the policy, but appears only in the claim for benefits filed after the accident, remains unexplained.

■ We are constrained to hold that the proffered evidence of the facts and circumstances surrounding the execution of the application for insurance was admissible to establish an estoppel upon the part of the insurer by reason of the conduct of its agent. The insured was not responsible for the omission or negligence in connection with the answer given to question 11, unless he had actual knowledge of the fact that such answer had been improperly or incorrectly written by the agent of the insurer. There is no claim made that the insured had any actual knowledge of the contents of the application, or that he had been asked to read it, or do anything other than sign his name at the end thereof.

In the instant action, plaintiff offered to prove by the testimony of his wife, corroborated by his own, that he fully, fairly and without reservation or evasion discussed with defendant's agent the injuries received by him in World War I, as well as the receipt by him of "some compensation or pension from the United States government"; that he exhibited to the agent the scars on his leg resulting from such injury; and that he "completely described the nature of the injuries and the nature of the treatment which he had received," but that, notwithstanding such disclosures to the defendant's agent, the latter "wrote down . . . the questions and answers which appear in the application for insurance." ■ When the insured acts in good faith and without fault and by reason of the fraud, mistake or negligence of a soliciting agent the truthful answers of an insured given at the time he makes application for insurance have been omitted or incorrectly set forth in the form used for informing the company of the applicant's previous injuries and treatment therefor, the insurer is estopped to set up the omissions in or falsity of such answers as a defense to an action on the policy.

In Cooley's Briefs on the Law of Insurance (vol. 3, page 2594) it is said:

"From an examination of the cases the following propositions may be regarded as established by the weight of authority: Where the insured, in good faith, makes truthful answers to the questions contained in the application, but his answers, owing to the fraud, mistake, or negligence of the agent filling out the application, are incorrectly transcribed, the company is estopped to assert their falsity as a defense to the policy. The acts of the agent, whether he is a general agent with power to issue policies, a soliciting agent, or merely medical examiner for the company, are in this respect the acts of the company, and he cannot be regarded as the agent of the insured, though it is so stipulated in the application or policy."

In commenting upon the correctness of this statement, our Supreme Court, in the case of *Lyon* v. *United Moderns,* 148 Cal. 470, 476 [83 P. 804, 113 Am.St.Rep. 291, 7 Ann.Cas. 672, 4 L.R.A.N.S. 247], had this to say:

"An examination of many of the authorities satisfies us that while there is some conflict in the cases on some of the matters included in this statement, the great weight of authority is with the statement as a whole, where the insured acts in good faith and is himself without fault."

The foregoing rule also finds support in the case of *Menk* v. *Home Insurance Co.,* 76 Cal. 50, 53 [14 P. 837, 18 P. 117, 9 Am.St.Rep. 158], a fire insurance case wherein it is said:

"The only point in the offered testimony was, that if the agent, knowing all the essential facts, made out the application for plaintiff, the company cannot take advantage of defective statements contained in it as not complying with the requirements of the company; nor would misstatements be fatal to the claim of plaintiff which the agent well knew to be false when he made out the application, received the money of the applicant, and issued the policy.

"The tendency of the decisions is plainly to hold all those conditions waived which, to the knowledge of the agent, would make the policy void as soon as delivered. Otherwise the company would knowingly receive the money of the applicant without value returned, and the whole transaction would be a palpable fraud. (*Kruger* v. *Western Fire and Marine Ins. Co.,* 72 Cal. 91 [13 P. 156, 1 Am.St.Rep. 42].)"

To the same effect is the holding in *Hart* v. *Prudential In-*

*surance Co. of America,* 47 Cal.App.2d 298, 301 [117 P.2d 930], and cases cited in *Lyon* v. *United Moderns, supra,* at page 476. In *Maxson* v. *Llewelyn,* 122 Cal. 195, 199 [54 P. 732], it is held that oral testimony is not admitted under the foregoing principle to vary or contradict that which is in writing, but proceeds upon the premise that the insurer procured the writing under such circumstances that it is estopped from using it or relying upon its contents against the party who signed it. In the same case, it is held that the rule above enunciated is applicable to accident insurance, as well as life and fire insurance. In *Maxson* v. *Llewelyn, supra,* at page 199, the Supreme Court quoted approvingly from *Union etc. Ins. Co.* v. *Wilkinson,* 13 Wall. (U.S.) 222 [20 L.Ed. 617], wherein it is well said:

"By the interested or officious zeal of the agents employed by the insurance companies in the wish to outbid each other and to procure customers, they not infrequently mislead the insured, by a false or erroneous statement of what the application should contain; or, taking the preparation of it into their own hands, procure his signature by an assurance that it is properly drawn, and will meet the requirements of the policy. The better opinion seems to be that, when this course is pursued, the description of the risk should, though nominally proceeding from the insured, be regarded as the act of the insurers. (*Rowley* v. *Empire Ins. Co.,* 36 N.Y. 550.)"

The foregoing decisions, founded as they are in reason and justice, meet our entire approval. Indeed, to hold otherwise would outrage equity and justice and be a blot upon the law.

Respondent places great reliance upon the fact that the written application for the policy issued herein contained the questions hereinbefore set forth and numbered 16. If the foregoing facts which plaintiff offered to prove be found true and the court should determine that the insured made a complete disclosure to defendant's agent of all the information now relied upon by defendant to show misrepresentation or concealment, and said agent, through fraud, mistake or negligence, omitted such complete and truthful answers from the application prepared by him, then neither the provisions in the application limiting the power of any officer, agent or representative of the insured, nor the foregoing question numbered 16 supersede the law making the principal liable for the negligent, wrongful or fraudulent acts of its agent, or the law of equitable estoppel (14 R.C.L., p. 1156; *Ruffino* v.

*Queen Ins. Co.,* 138 Cal.App. 528 [33 P.2d 26]; *Morrison* v. *Mutual Life Ins. Co. of N. Y.,* 15 Cal.2d 579, 588, 589 [103 P.2d 963]).

We deem it unnecessary to discuss appellant's contention that the trial court erred in admitting evidence concerning his failure to disclose in his application the fact that he received medical attention for his injuries incurred in 1918 during his military service in World War I, for the reason that, at the trial, appellant offered to prove that he disclosed to respondent's agent not only the fact that he received injuries in 1918 but "the nature of the treatment which he had received for them." Appellant's contention that such evidence was inadmissible because respondent failed to specifically plead as a defense the failure of appellant to disclose the fact that he had received medical attention in 1918 cannot be sustained. An action for declaratory relief is an equitable proceeding (*Adams* v. *Cook,* 15 Cal.2d 352, 362 [101 P.2d 484]). Equity does not look with favor upon litigation by piecemeal, and whenever possible will dispose of the entire controversy between the parties, will grant complete relief, and wherever possible will settle and determine all differences between the parties in the action, leaving nothing for future litigation between the same parties and upon the same subject matter (*Sonnicksen* v. *Sonnicksen,* 45 Cal.App. 2d 46, 52 [113 P.2d 495]; *Imperial Mutual Life Ins. Co.* v. *Caminetti,* 59 Cal.App.2d 494, 498 [139 P.2d 693]). Equity will also give consideration to the fact that, in view of plaintiff's offer to prove the very issue about which he now complains, there is no showing of prejudice to him by the court's action in determining such issue. To insist, in an equitable proceeding such as an action for declaratory relief is, and under the facts and circumstances present in the case at bar, that the court committed prejudicial error in admitting evidence concerning the claimed failure of plaintiff to disclose medical attention received by him in 1918 would do violence to the rule enunciated in section 3532 of the Civil Code to the effect that "The law neither does nor requires idle acts." The court was empowered to settle all differences between the parties arising from the pleadings or raised by the evidence, thereby deciding the whole case and doing complete justice. "Equity regards that as done which ought to have been done." (10 Cal.Jur. 505; Civ. Code, § 3529; *Union Oil Co.* v. *Recon-*

*struction Oil Co.*, 20 Cal.App.2d 170, 183 [66 P.2d 1215]).

We have noted the other contentions made on this appeal, but, in view of the foregoing conclusions at which we have arrived, we deem it unnecessary to discuss them.

Appellant urges that the judgment be reversed with directions to the trial court to enter judgment in his favor. We do not feel that a reversal with directions is warranted. Respondent should have an opportunity to examine the witnesses whose proffered testimony was included in appellant's offer of proof and to challenge the verity of such testimony by contradictory evidence should respondent be so advised.

For the reasons herein stated, the judgment is reversed and the cause remanded for a new trial.

York, P. J., and Doran, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied May 6, 1946.