[Civ. No. 23502.    Second Dist., Div. One.    Aug. 12, 1959.]

BETTY W. MENGE, Appellant, v. LOUIS A. BROWN, JR., et al., Respondents.

Joseph W. Fairfield and Ethelyn F. Black for Appellant.

Greenbaum, Baker & Ancel and Irwin E. Sandler for Respondents.

WHITE, P. J.—Plaintiff Betty W. Menge (formerly Betty W. Brown, wife of the defendant Louis A. Brown, Jr., and at the time of trial Betty W. Chapman) appeals from certain portions of the judgment in an action brought by her against her former husband and one Robert J. Magdlen ''for declaratory relief and to invalidate a trust,'' of which appellant and her former husband were trustors and said Magdlen was trustee.

Prior to the trial the parties resolved most of their controversies, terminated the trust by agreement, and, in order to expedite the sale of a portion of the trust properties then in escrow, waived their respective rights to appeal except as to certain limited questions.

The portion of the judgment from which the instant appeal was taken and of which appellant, in her briefs, seeks reversal is: ''Item 2a (5) of the judgment . . . that the net proceeds of the sale of Lot 34 . . . shall be divided and paid over by the Trustee equally'' to plaintiff and defendant Brown.

In her action for divorce, on December 21, 1953, plaintiff and her then husband, defendant Brown, stipulated in open court that plaintiff should be awarded ''The use of Lot 34 located in Palmdale, and *all of the income* to be derived from said real property. In the event said property is leased for commercial purposes, Mrs. Brown is to have the right to remove the main house located upon said real property and to retain title to said house as her separate property.'' (Emphasis added.) (*Brown* v. *Brown,* 162 Cal.App.2d 314, 316 [328 P.2d 4].)

The interlocutory judgment dated, signed and filed February 23 and entered February 24, 1954, provides that, pursuant to said stipulation certain specified assets are awarded to husband and wife as their respective sole and separate properties. Included in such award as the sole and separate property of plaintiff wife is ''the use of said Lot 34 . . . and the *residential rental income* derived therefrom. In the event the said property is leased for commercial purposes . . . the right to remove the house . . . and retain title thereto as her separate property, *whereupon her right to the income from said real property shall terminate.*'' Said judgment in the divorce action provides further that ''all the balance of the property of which the parties are possessed,'' listing said Lot 34 and five other items *''shall be placed in trust* with the trustee . . . the terms of said trust shall be reduced to writing and executed by both parties and said trust to be operated

*for the benefit of the plaintiff Betty W. Brown and defendant Louis A. Brown, Jr. sharing equally* in the benefits of said trust.'' (Emphasis added.)

Both the declaration of trust between the parties plaintiff and defendant Brown, as trustors, and defendant Magdlen, as trustee, and the grant deed from plaintiff and defendant Brown to said Magdlen, as trustee, are dated and acknowledged February 8, 1954 (after the stipulation made in open court and entered in the minutes of the divorce action and before the interlocutory decree was made). Said declaration of trust provides that ''this trust and the terms thereof are created and made a part of that certain interlocutory decree of divorce between the trustors herein named'' (plaintiff and defendant Brown in the instant action), ''dated the 21st day of December, 1953'' (the date of the stipulation in open court, but not the date of said interlocutory decree).

The trust property described in an exhibit attached to said declaration of trust and referred to therein includes said Lot 34 and the other items of community property ordered by the divorce court to ''be placed in trust.'' By said declaration of trust it is agreed that ''the trustee shall pay to or apply for the benefit of both of the trustors herein, *in equal shares* all of the income from the trust estate.'' (Emphasis added.)

At all times since December 21, 1953, plaintiff has remained in the exclusive possession of said Lot 34, continued to reside in the main house and to collect rents for the two smaller houses thereon. Such rentals were not then, and are not now, claimed to be a part of the trust estate. Neither the declaration of trust or the deed from the Browns to the Trustee mentions plaintiff's right to the use and/or rentals of said lot.

None of the assets awarded by the court to the parties as their separate properties are mentioned in said declaration of trust. Neither plaintiff nor defendant Brown has claimed any interest in the properties awarded to the other, except that in the instant action defendant Brown contends that the value of his interest in said Lot 34 is equal to the value of the interest of plaintiff therein.

April 29, 1957, the superior court denied plaintiff's motion to amend *nunc pro tunc* said interlocutory judgment by substituting ''all of the income'' for the ''residential income'' of said Lot 34, and by striking the clause terminating her right to income from said lot in the event it should be leased for

commercial purposes. Judge Paonessa, before whom said stipulation had been made and who granted the interlocutory decree also heard said motion to amend the interlocutory decree. He then clearly stated that the interlocutory decree contained no clerical error, that the stipulation of December 21, 1953, was ambiguous, that the parties had the right to clarify it, that the interlocutory judgment upon his order was thereafter prepared by plaintiff's counsel, examined and approved by the attorney for defendant Brown, and it expressed the intention and agreement of the parties as he then understood it. His order denying plaintiff's motion to amend was affirmed by the District Court of Appeal (*Brown* v. *Brown, supra*, p. 317) and hearing was denied by the Supreme Court, September 17, 1958.

Not only were plaintiff and defendant Brown the Trustors in said declaration of trust, but they were also the beneficiaries and at all times during their lifetime and competency retained in their own hands the right to make and control sales or exchanges of trust property and investments of trust funds, and the right, by their agreement in writing, to amend or revoke said trust.

December 18, 1957, plaintiff, defendant Brown and defendant Magdlen, their said trustee, executed an agreement providing for the disposition of the property of the trust which agreement they later stipulated "shall be incorporated as a portion of the pretrial order herein and . . . shall be made a part of the final judgment herein."

They thereby agreed that said trust shall be terminated and dissolved and the properties distributed by order of court; that said Lot 34 is to be sold by the trustee and the funds remaining after payment of the expenses of sale shall be distributed by court order, it being expressly agreed that such sale "shall in no way prejudice any of the rights" of plaintiff "over and above the one-half interest in said Lot 34 or proceeds thereof."

"(b) That in the present action, at the trial of said action, it shall be determined by the court, the interest of Chapman (plaintiff) in and to Lot 34 according to the terms of the interlocutory decree between Chapman and Brown dated the 23d day of February, 1954. If it is determined that said Chapman has only a one-half interest in Lot 34 and no more, then the proceeds allocated to said Lot 34 shall be divided equally between Chapman and Brown. If the Court shall determine that Chapman has a further present interest in

Lot 34 in addition to her half interest in Lot 34, then the Court shall thereupon determine the value of such excess interest over and above Chapman's one-half interest, and the resulting sum, if any, shall be paid to Chapman and the remaining proceeds of said Lot 34 shall be divided equally between Chapman and Brown. That this stipulation shall not preclude an appeal by either party on this issue.''

In the pretrial stipulation and agreement, signed by the attorneys for the respective parties and by reference made a part of the pretrial order, it is said that one of the issues remaining to be tried is ''the amount and type of estate'' the plaintiff has in said Lot 34.

At the opening of the trial of the instant action, Attorney Fairfield representing plaintiff stated that plaintiff had no evidence to present, that the pretrial stipulation had taken care of that, that the question of plaintiff's estate in Lot 34 is a question of law, and ''I don't think this Court has jurisdiction to hear and determine it since the matter of the interlocutory decree has settled that.'' The court then called counsel's attention to their pretrial stipulation which had been made a part of the pretrial order and specified the issues to be tried as including ''The amount and type of estate the plaintiff . . . has in that parcel of property described as Lot 34, being parcel (a) of Exhibit ''A'' of the declaration of trust.'' After discussing the other items, the following occurred:

''THE COURT: . . . The next item is the type of estate that Betty Chapman has in part of parcel described, Lot 34.

''MR. FAIRFIELD: That can only be answered by referring to the interlocutory decree of divorce. . . .

.   .   .   .   .   .   .   .   .   .   .   .

''THE COURT: This is set forth in the interlocutory decree of divorce. I don't see why it isn't res judicata. How could I pass on it?

''MR. FAIRFIELD: That is our position, Judge.

''MR. ZABEL (attorney for defendant Brown): Well, your Honor, if you will read the interlocutory decree it refers to this trust which is a part of the present action. It is our position that the trust instrument itself gives this particular property to the trustee to be held for the equal benefit of both of the parties and that is the only provision the trust makes.''

After some discussion of the then pending appeal from the order denying plaintiff's motion in the divorce action to

amend the interlocutory decree hereinabove referred to, the court said: ''. . . If the Appellate Court should reverse the ruling of Judge Paonessa then the matter would come before him to amend the judgment.''

Attorney Zabel then argued that, since the documents were ambiguous, the court should hear evidence of the intention of the parties and surrounding circumstances and interpret the declaration of trust. Plaintiff's counsel countered with the statement that the pretrial order and stipulation disposed of all questions concerning the declaration of trust and left the question of plaintiff's interest in Lot 34 to be determined from the interlocutory decree of divorce, ''dependent upon the decision of the District Court of Appeal.''

Defendant's attorney Zabel insisted that the trust was executed before the interlocutory decree was signed, that the deeds from the parties to the trustee named in the interlocutory decree are absolute in form, without reservation, and reading the declaration of trust with the interlocutory decree there is an uncertainty as to plaintiff's interest in Lot 34. He then said: ''Certainly she had a right to remove the house from it. How long was she to have the right to the residential income? What is meant by the 'use of Lot 34'? None of those questions can be answered by looking at this instrument.''

Both parties then informed the court that their agreement terminating the trust was for the sale or other disposition of the properties but left to be decided plaintiff's interest in Lot 34 or what portion of the proceeds of any sale of Lot 34 was to be distributed to her.

The court said ''I think your issue should be determined who has the right to determine whether or not this property should be leased for commercial purposes. That certainly is a valuable right to somebody.'' The defendant then urged that ''it is proper for the court at this time to inquire into the circumstances of the drawing of these documents, the execution, what was the intention of the parties at the time they were executed,'' and plaintiff's counsel asked that he be heard on the law against that procedure.

''THE COURT: This trust agreement refers to the fact that it is made a part of that certain interlocutory decree of divorce dated December 21, 1953 and the decree of divorce was dated February 23, 1954.

''MR. ZABEL: Your Honor, that arose by reason of the fact that on December 21, 1953 the court held that hearing pur-

suant to which the interlocutory decree of February was prepared and signed.

"MR. FAIRFIELD: The interlocutory decree also refers to the creation of the trust . . . (quoting)."

After considerable further argument of counsel, Attorney Zabel asked that Mr. Olstyn, plaintiff's attorney in the divorce action subpoenaed by defendant, be permitted to testify out of turn because he was leaving that night for San Francisco. The court indicated its willingness to do so "if there is no objection," after which Attorney Fairfield objected to the admission in evidence of any conversations prior to the interlocutory decree citing cases to the effect that the decree "would have to stand by itself"; and Attorney Zabel argued that said interlocutory decree based upon the stipulation of the parties "with respect to the disposition of the property was nothing more than a property settlement agreement." Thereupon the testimony of Mr. Olstyn was taken "subject to the striking in its entirety."

Attorney Olstyn, who represented plaintiff in the divorce action, testified on behalf of defendant that on December 21, 1953, Mr. Brown, Attorney Reitz representing him, plaintiff and himself as her attorney, on order of the judge conferred in the attorneys' conference room concerning the disposition of the property of plaintiff and defendant Brown; they particularly discussed Lot 34, and the improvements thereon "to be used and occupied by Mrs. Brown, and she was to derive the income from the two cabins or bungalows upon the property" and "at such time as the property were sold or leased for commercial purposes" she would have "the right to remove the improvements, that is, the houses on the property" and they would be "her own separate property from there on out"; "a life estate for Mrs. Brown" was not discussed; he prepared the interlocutory decree.

After considerable argument by counsel and several recesses, the trial judge stated: "Well, I think that the solution to this problem lies in this situation: The proceedings on this divorce matter were heard on the 21st day of December 1953. Now, I see no reason for all even though the judgment was thereafter signed and dated on the 23d day of February, 1954, and it was entered on February 24, 1954, I see no reason why I shouldn't decree that the judgment be entered nunc pro tunc as of the 21st day of December, 1953. *There would be no necessity then to have to do anything at all*

*about this judgment, the entire matter would then be covered by this declaration of trust.''* (Emphasis added.)

"MR. FAIRFIELD: I am a little puzzled, Judge. I couldn't follow what you had in mind.

"THE COURT: This declaration of trust is dated the 8th of February and it refers to the interlocutory decree of divorce and the rights under that, as though it had actually been signed, dated and entered as of the 21st day of December and I think that we would then be governed by this declaration of trust entirely. *We wouldn't have to do anything at all about this interlocutory judgment.* (Emphasis added.)

"MR. FAIRFIELD: Would the question then before the Court then be an interpretation of the trust agreement?

"THE COURT: Well actually that is all it would be."

It was again called to the attention of the court that by pretrial stipulation and order the trust had been terminated and dissolved, the disposition of the trust property provided for, and that the only question remaining undetermined was how much more than half of the proceeds of Lot 34 plaintiff should receive. The court then indicated that the declaration of trust provided for an equal division; and that the "interlocutory decree of divorce doesn't enter the picture."

Plaintiff's objection to Attorney Olstyn's testimony was then overruled, and the court said "We will proceed to take the testimony only relating to the Declaration of Trust. . . .

"I will make an order at this time decreeing this interlocutory judgment of divorce be entered nunc pro tunc, so the record will be straight, good cause appearing to the court. Therefore the interlocutory judgment of divorce heretofore entered on February 24, 1954 be dated, signed, filed and entered nunc pro tunc as of December 21, 1953 and the clerk is ordered to make said entry."

Plaintiff then moved that the prior testimony of Mr. Olstyn be stricken as it was entirely in reference to the stipulation and the interlocutory decree.

The court answered, "Well, no. . . . This all goes to the Declaration of Trust ultimately. We are not going to do anything about altering the interlocutory judgment of divorce."

Mr. Olstyn testified that he did not prepare the declaration of trust; that it was prepared by Mr. Magdlen, the trustee; that in the conversation of the parties and their attorneys just prior to their stipulation of December 21, 1953, the plaintiff and defendant Brown told him that their properties

were to be placed in trust under a trust agreement to be drawn by Mr. Magdlen (the trustee) and "they were each to share equally and have a common interest in those properties"; that he first saw the declaration of trust when Mr. Magdlen mailed it to him for his examination subsequent to his having prepared the interlocutory decree of divorce and having submitted the interlocutory decree of divorce to Mr. Jim Reitz for his examination but before the signing of the interlocutory decree by Judge Paonessa; that he made no changes in the proposed declaration of trust; that he and Mr. Reitz had decided between themselves to recommend to Mr. Magdlen that the trust agreement be executed by the parties prior to the submission of the interlocutory decree for signature of the court; that, after he was informed that the declaration of trust had been signed, he submitted the interlocutory decree to the court; that in the conference just before their stipulation of December 21, 1953, it was agreed that certain items of community property were to be awarded to each party, and that the balance was to be put in trust to be operated for the parties "sharing equally." On cross-examination he produced and read his notes made during the prestipulation conference, which included the following: "To Mrs. Brown. Use of Lot 34 and all income therefrom. In event said property is leased for commercial purposes Mrs. Brown has right to remove said house and retain title thereto as her separate property."

Mr. Olstyn testified that he never at any time discussed with Mr. Magdlen, the trustee, what was to go into the trust. He did send him a letter enclosing a copy of the interlocutory decree to be submitted to the court for signature after the declaration of trust had been signed. He did receive a copy of the trust agreement after it had been signed by the parties. He testified that "The form of the trust agreement was acceptable as far as I was concerned by reason of the fact that Mr. Brown and Mrs. Brown had formerly gone to Mr. Magdlen before they had started their divorce proceedings. It was my understanding that their arrangements relative to the property were to be set forth in the property settlement agreement more so than in the interlocutory decree of divorce. Therefore, I did not question the contents of the Declaration of Trust as prepared by Mr. Magdlen because both Mr. Brown and the then Mrs. Brown both expressed, they had unfailing and the utmost of confidence in Mr. Magdlen."

Mr. Olstyn testified further that, after two and a half hours of heated discussion on December 21, 1953, the parties and their attorneys stepped from the conference room into the court and "endeavored to cover as thoroughly as possible the agreement as arrived at." The court at that time ordered that the interlocutory judgment be prepared by him and "approved as to form and content by Mr. Reitz."

Mr. Olstyn further testified that, after Mr. Reitz had examined his rough draft of the interlocutory decree, and Mr. Reitz' letter suggesting modifications and changes had been considered by him, he telephoned Mr. Reitz, discussed the proposed interlocutory judgment, and inserted into the rough draft the following phrase "Whereupon her right to the income from said property shall terminate." He then so prepared the interlocutory decree.

Mr. Olstyn also testified that "Mrs. Brown was being represented by Mr. Magdlen on that trust agreement. I had nothing to do with the preparation of the trust agreement or the formulation of its terms."

Plaintiff, at the end of Mr. Olstyn's testimony, asked the court to rescind its order filing the interlocutory decree *nunc pro tunc* on the 21st day of December, 1953, because "the trust agreement should precede in point of time the interlocutory decree of divorce." The court said, "Not according to the trust agreement as written," and denied the motion without prejudice.

Robert J. Magdlen, trustee and defendant in the instant action, called as a witness by defendant Brown, testified that the grant deed of Lot 34 by plaintiff and defendant Brown to him in trust was prepared by him, signed by them, and delivered to him; that he also prepared the declaration of trust after the requests by telephone from Mr. Reitz and Mr. Olstyn; that his first conversations regarding such a trust agreement were with Mr. and Mrs. Brown together about the early part of 1953; that the reason for the trust was that both Mr. and Mrs. Brown believed the properties would increase in value if held and they would both lose money by any early sale; that he prepared the declaration of trust early in 1953 when he was representing both Mr. and Mrs. Brown; that he later drew it "finally for—at the call of Mr. Reitz and Mr. Olstyn" and would be in the same position; that the declaration of trust as finally executed by them was identical with the one first drawn "with the exception of certain inclusions as a result of the forwarding to (him) of the interlocutory

decree''; that his first conversation with them was in March or April 1953; then later each retained counsel and the divorce action was commenced; he next heard by telephone from their respective attorneys in December 1953; that he then forwarded to both lawyers copies of the declaration of trust already prepared by him; that Mr. Olstyn did forward him a copy of the proposed interlocutory decree; that he never discussed with him ''the use of Lot 34 that Mrs. Brown was supposed to have''; that he was not told to incorporate into the declaration of trust the terms of the proposed interlocutory decree; that he was told by Attorneys Reitz and Olstyn that the parties were settling on the basis of the ''original trust agreement I had drawn''; that he wanted the copy of the proposed interlocutory decree ''for the purpose of having the date, time and place and, of course their proceedings''; that he received no ''instructions as to the carry-over of the provisions of the interlocutory decree into the trust agreement''; that in December 1953 and thereafter he was not representing plaintiff; he did not talk with the parties and had no knowledge that they had made any agreement respecting Lot 34 different from the terms of the original declaration of trust prepared by him in the spring of 1953; that the parties came separately and executed the declaration of trust in his office; at the same time they signed the deed of Lot 34; that he knew that Mrs. Brown was receiving the income from Lot 34 at all times; that that was part of their original discussion; that at ''the time of the original discussion on the original . . . trusteeship'' the use and income of Lot 34 was discussed; that Mrs. Brown was to live on the property and receive the income from the tenancy boarders on the property and take the house off when the lot was leased or sold was an agreement between them and it was left out of the trust as a matter of accommodation; that he knew nothing at all about any stipulation in court or any agreement of the parties other than the one in the spring of 1953 when they had their original discussion concerning the creation of the trust; that Mrs. Brown is still using Lot 34 and receiving all the income from it; that it had never been leased or anything; and ''that the trustee receives none of the income off the property on Lot 34 or the houses.''

Defendant Brown testified in his own behalf that in April 1953, he and plaintiff had tried to reach an agreement for the division of their properties but had not been able to do

so; that he was present in court on December 21, 1953, when Mr. Olstyn read their stipulation that "the use of Lot 34 . . . and all of the income to be derived from said real property" should be awarded to plaintiff and "in the event said property is leased for commercial purposes Mrs. Brown is to have the right to remove the main house located upon said real property and to retain title to said house as her separate property"; that that was his understanding of their agreement at that time.

At the end of the testimony of defendant's witnesses, plaintiff renewed her motion that the court rescind its order filing the interlocutory decree in the divorce action *nunc pro tunc*, and the court took "that matter under advisement."

Appellant urges that, since no part of the divorce action, except the interlocutory decree as an exhibit, was before the court in her action for declaratory relief, the amendment of the interlocutory decree *nunc pro tunc* upon the court's own motion was in excess of jurisdiction, and was error prejudicial to her.

Respondent replies that "such action by the trial court . . . is not the correction of any error, whether clerical or judicial, but is merely the entering of such a decree as of a prior date" and "is specifically authorized by Civil Code, Section 131.5." Respondent also "submits that the trial court, in order to dispose of all of the issues before it, acted within its sound equitable discretion in ordering the Interlocutory Decree entered *nunc pro tunc* as of December 21, 1953" and cites as authority the case of *Byrd* v. *Mutual Benefit Health & Accident Assn.*, 73 Cal.App.2d 457, 465 [166 P.2d 901], where, with reference to an entirely different factual situation, it is said: "An action for declaratory relief is an equitable proceeding . . . Equity does not look with favor upon litigation by piecemeal, and whenever possible will settle and determine all differences between the parties in the action, leaving nothing for future litigation between the same parties and upon the same subject matter . . . ."

Section 131.5 of the Civil Code provides that, ". . . The court may cause such interlocutory judgment to be entered nunc pro tunc as aforesaid, even though an interlocutory judgment or final judgment or both judgments may have been previously entered, *where by mistake, negligence or inadvertence the interlocutory judgment was not entered as soon as it could have been entered under the law if applied for* . . . ." (Emphasis added.)

■ Where, as in the instant action for declaratory relief, there is no claim by any party or showing of any kind that the signing, filing, or entry of an interlocutory or final decree divorcing two of the parties would have been earlier except for "mistake, negligence or inadvertence," the court in such subsequent action for declaratory relief is without power to order that the judgment in the divorce action be entered *nunc pro tunc* as of an earlier date. (*Berry* v. *Berry,* 140 Cal.App.2d 50, 59, 60 [294 P.2d 757]; *Hull* v. *Hull,* 102 Cal. App.2d 382, 385 [227 P.2d 546]; *Hamrick* v. *Hamrick,* 119 Cal.App.2d 839, 847, 848 [260 P.2d 188].)

■ The existence or nonexistence of "mistake, negligence or inadvertence," and if it does exist whether it was the cause of any delay in dating, signing, filing or entering an interlocutory judgment in a divorce action, are questions of fact to be determined by the trial court. ■ There being no evidence before the trial court in support of the affirmative determination required to uphold the order, such order should not have been made.

We cannot agree with respondent, that, assuming such order for the entry of the interlocutory decree *nunc pro tunc* as of a prior date to be erroneous, appellant was not prejudiced thereby. According to the uncontroverted testimony of respondent's witnesses hereinbefore narrated, appellant was represented by an attorney in her action for divorce, but she was without counsel with reference to the trust agreement. The declaration of trust was in reality a portion of the property settlement and under the circumstances shown by the record on the instant appeal is enforceable only so far as approved by the divorce court. The interlocutory decree dated, signed, filed and entered later than such trust agreement and speaking of the trust agreement as something to be done in the future is not an approval of the declaration of trust as signed by the parties. Where the declaration of trust is in conflict with the interlocutory judgment, the latter must control.

■ The interlocutory decree has become final as to its provisions awarding items of community property to husband and wife as their respective separate properties. The use and residential income of Lot 34 until said lot shall be "leased for commercial purposes" having been awarded to plaintiff as her separate property, it is in the same category

as the automobiles, bank accounts, trust deed notes and other items likewise awarded as separate property.

The provision of the interlocutory judgment that "all the balance of the property of which the parties are possessed" shall be put in trust does not include the properties therein awarded to the spouses as their separate properties.

Appellant's interest in said Lot 34 being controlled and defined by the interlocutory judgment, and not by the declaration of trust, and, it having been adjudicated in *Brown* v. *Brown, supra*, that the community property of the parties was, pursuant to their stipulation and agreement, divided between them exactly as stated in the interlocutory decree, the admission of parol evidence of the intention of the parties and their then counsel in that respect was error. The respective interests in said Lot 34 must be determined from the interlocutory decree itself.

Appellant, as stated in the interlocutory decree, in addition to her undivided one-half interest in said Lot 34, owns the "use and residential income therefrom" until said lot is leased for commercial purposes, and at such time has the right to remove the houses therefrom.

The portion of the judgment appealed from designated as "Item 2a (5)" is reversed with directions that, if and when the matter shall again be brought to trial, the court proceed to determine the value of plaintiff's interest in excess of the interest of defendant in said Lot 34.

The other portions of the judgment, from which plaintiff has appealed and in connection with which no errors are pointed out in appellant's brief, or found by us, are affirmed.

The court below is further ordered to annul and set aside its order in the instant action directing that the interlocutory judgment in action entitled *Betty W. Brown* v. *Louis A. Brown, Jr.,* and numbered SF D 3468, be dated, signed, filed and entered *nunc pro tunc* as of December 21, 1953; and said court is further ordered to restore said interlocutory judgment to its former condition to show that it is dated, signed and filed February 23, 1954 and entered February 24, 1954.

The parties shall bear their respective costs on appeal.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied August 28, 1959, and respondents' petition for a hearing by the Supreme Court was denied October 7, 1959. White, J., did not participate therein.