[Civ. Nos. 10120, 10193. Third Dist. July 30, 1963.]

STANLEY A. SILLS et al., Plaintiffs, Cross-defendants and Respondents, v. CHARLES SILLER, Defendant and Appellant; PRESTON HATCH, as Guardian, etc., Defendant, Cross-complainant and Appellant.

Clifford J. Krueger for Defendant and Appellant.

Robert E. Hatch and Leighton Hatch for Defendant, Cross-complainant and Appellant.

Rich, Fuidge, Dawson & Marsh and Richard H. Fuidge for Plaintiffs, Cross-defendants and Respondents.

SCHOTTKY, J.—Charles Siller appeals from a judgment in favor of Stanley A. Sills and Leslie W. Sills in the amount of $17,570.99; and Preston Hatch, guardian of

the estate of Cora Leach, an incompetent person, appeals from a declaratory judgment in her favor in the amount of $6,237.66.

This case arose out of a timber transaction involving a 40-acre tract of land in Yuba County which was assessed to "Unknown Owners." Early in 1956 defendants, Kay Shadd and Ed Studley, had the assessor mail tax notices concerning this property to them, and the records in the assessor's office were changed to read, "Unknown Owners, c/o Shadd and Studley." These two men along with Charles Siller were engaged in a joint enterprise, the object of which was to discover and obtain title to timberlands which had no ownership.

In April 1956, before any title had been obtained, Studley showed the property to Wilbur Cummings, a logger. Cummings after viewing the property estimated that there were approximately one and one-half million board feet of merchantable timber in the stand. Cummings asked Studley how he had discovered such a stand and Studley replied that it was a secret. He later told Cummings that he and his partner owned the property. To satisfy Cummings' suspicions Studley took Cummings to the assessor's office and showed him the map of the described property. Cummings testified that he is farsighted and that he cannot read small print without his glasses which he did not have with him. Studley opened the book to the described property and told Cummings, "There it is, . . ." Cummings was able to read the names of Shadd and Studley but could not read the other writing.

Cummings then went to Shadd's place of business where the sale of the property was discussed further. Studley had previously been informed that Cummings was acting for the Sills. Cummings telephoned Helen Lear and asked if there were a possibility that the Sills could advance $10,000 on the property. Studley and Shadd then went out to the Sills Brothers' mill where Cummings told Stanley Sills about the timber. Cummings testified that while he had been suspicious of the title he was satisfied after the trip to the assessor's office.

Subsequently, Shadd and Studley received $14,076.57 for 935,650 board feet of timber. Thereafter, the Sills discovered that the property was owned by Andrew Leach, Cora A. Leach, and Cora Leach, an incompetent. Settlement was made with Andrew Leach and Cora A. Leach, but the guardian of the estate of Cora Leach was unable to obtain

the consent of the superior court for a settlement. The evidence also shows that Charles Siller was instrumental in having Shadd and Studley instruct the assessor to mail the tax bills to them, and that Siller, Shadd and Studley were engaged in a joint enterprise to discover and obtain title to timberlands which had no ownership. The evidence also shows Charles Siller received part of the proceeds paid by Sills Brothers.

Stanley A. Sills and Leslie W. Sills brought an action against Kay Shadd, Ed Studley and Charles Siller for the monies paid in settlement to the Leaches and a declaration of the amount due the estate of Cora Leach, incompetent, and also recovery from Shadd, Siller and Studley for this latter amount. The guardian of the incompetent's estate cross-complained against Stanley A. Sills and Leslie W. Sills for treble and punitive damages.

Judgment was entered in favor of Stanley A. Sills and Leslie W. Sills against Shadd, Studley and Siller and in favor of Preston Hatch, as guardian of the estate of Cora Leach, an incompetent, against Stanley A. Sills and Leslie W. Sills. Siller and Preston Hatch, guardian of the estate of Cora Leach, incompetent, have appealed.

APPEAL OF CHARLES SILLER

Siller contends that there can be no recovery based on fraud in this case because, as he alleges, there was no reliance on the representations of Studley. This contention is based on the premise that Cummings was an employee of the Sills and that Cummings was suspicious of Studley's title and realized the property was assessed to "Unknown Owners." Siller seeks to invoke the rule that if a person makes an investigation of the facts he will be charged with knowledge of those facts which reasonable diligence would have disclosed.

The court rejected Siller's contention that Cummings was an employee and found that he was an independent contractor. Section 2 of Restatement Second of Agency defines an independent contractor as follows:

"(3) An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. . . ."

Section 3353 of the Labor Code defines an independent contractor as follows:

■ *"'Independent contractor' defined.* 'Independent contractor' means any person who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished.''

■ It is stated in *Empire Star Mines Co.* v. *California Emp. Com.,* 28 Cal.2d 33 [168 P.2d 686], at page 43:

''. . . In determining whether one who performs services for another is an employee or an independent contractor, the most important factor is the right to control the manner and means of accomplishing the result desired. If the employer has the authority to exercise complete control, whether or not ·that right is exercised with respect to all details, an employer-employee relationship exists. ■ Strong evidence in support of an employment relationship is the right to discharge at will, without cause. (*California Emp. Com.* v. *Bates, supra* [24 Cal.2d 432 (150 P.2d 192)] ; *California Emp. Com.* v. *Los Angeles etc. News Corp., supra* [24 Cal.2d 421 (150 P.2d 186)].) ■ Other factors to be taken into consideration are (a) whether or not the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or the job; (g) whether or not the work is a part of the regular business of the principal·; and (h) whether or not the parties believe they are creating the relationship of employer-employee. (Rest., Agency, § 220; Cal. Annot., § 220.)''

■ Cummings testified that he was employed as a contractor by Sills Brothers. He was paid $13 a thousand, less $3.00 for the use of a tractor which was furnished by Sills Brothers. He had several men working for him whom he paid. Sills Brothers never supplied help or labor nor did Cummings use their hand tools. Sills Brothers never went out to see the logs that were being cut. After Cummings finished a job Sills Brothers would tell him what property they wanted him to cut. Sometimes Cummings would be moved from one job to another.

From this evidence the trial court could properly con-

clude that Cummings was an independent contractor since there was no evidence of any control in the method of doing the work. With this finding Siller's argument falls, and Cummings' knowledge would not be imputed to the Sills.

█ But in any event, Cummings' testimony shows that he had no actual knowledge of the true state of the title. He did not see the phrase "Unknown Owners."

In discussing this problem Harper & James state in The Law of Torts, at page 584:

"To establish that a loss sustained in a business transaction was caused by the defendant's misrepresentation, it must appear that the plaintiff relied upon the misrepresentations, and to show reliance, it must appear that the plaintiff believed the representations to be true. If the plaintiff knew that the representations were false or if he was already in possession of knowledge and facts which the defendant fraudulently attempted to conceal, he can not complain that he had been misled to his damage by the defendant's attempted deception. 'A reliance upon the representations of another person in respect to any fact necessarily implies a belief in the truth of the statement thus made.' The idea of a person knowing a representation to be false and at the same time 'relying' thereon is a contradiction in terms.

"Again, if the misrepresentation on the part of the defendant pertained to a trivial or immaterial fact, it would ordinarily be clear that such misrepresentation did not induce the plaintiff's reliance. It is only a misrepresentation of a material fact that can be said to cause the loss. To determine whether or not a misrepresentation was actually relied upon, whether it was a cause in fact of the damage, the sine qua non rule is often applied. If the plaintiff would not have acted on the transaction in question but for the misrepresentation, such misrepresentation was an actual cause of his loss. If he would have adopted the same course irrespective of the misrepresentation and would have sustained the same degree of damages anyway, it can not be said that the misrepresentation caused any damage, and the defendant will not be liable therefor.

"If the plaintiff indicates his skepticism of the defendant's representations and resorts to other sources of information to ascertain the facts in question, ordinarily there will be no reliance and hence no damage caused by the misrepresentations. The fact that persons other than the defendant also made representations or that the plaintiff made inquiries of

742

others will not necessarily show a want of reliance, if it is found, as a fact, that the defendant's misrepresentations played a substantial part in inducing the plaintiff's deception.''

The fact that Cummings could have seen the term ''Unknown Owners'' was certainly evidence from which a court could find there was no justifiable reliance. But Cummings testified he did not see those words. With such a conflict it was a question of fact which was resolved against appellant Siller.

■ Appellant's next contention is that the trial court erred in refusing to receive testimony as to the trade custom of loggers and millers in checking the record title of property prior to purchase.

The offer of proof actually made was ''I would like to make an offer of proof at this time, Your Honor, in that this witness, Charles Siller, would at this time testify that the custom and practice in regards to checking title where timber or property was being offered for sale or purchase by a person that was unknown in this area, would be not only to check the Assessor's records, check the plats themselves as to who the property was assessed to, but also to check the Recorder's office to see in whose name the record did appear.''

The offer was properly rejected. There was no evidence that any of the parties was unknown in the area so the custom would not be applicable to the facts presented in this case. Furthermore, in view of the facts and circumstances of the case at bench as shown by the record and found by the trial court, it is difficult to understand how appellant could have been prejudiced by the rejection of the offer of proof.

■ Appellant Siller's final contention is that the judgment was erroneous because it included an amount that was declared to be due the estate of the incompetent which sum had not been paid. This was in part an action for declaratory relief.

A proceeding in declaratory relief is one in equity, and it is a settled rule that when a court of equity assumes jurisdiction it will seek to administer complete relief and make a final disposition of the litigation. (*Zimmer* v. *Gorelnik*, 42 Cal.App.2d 440 [109 P.2d 34]; *Byrd* v. *Mutual Benefit H. & A. Assn.*, 73 Cal.App.2d 457 [166 P.2d 901].) Here Siller's liability to the Sills was clearly established as was the liability of the Sills to the estate. It was not improper to

establish the amount. All the parties were before the court and such a determination was necessary for a complete disposal of the litigation. (See *Byrd* v. *Mutual Benefit H. & A. Assn., supra.*)

### APPEAL OF PRESTON HATCH, GUARDIAN OF THE ESTATE OF CORA LEACH, INCOMPETENT

The first contention in cross-complainant's appeal is that the court erred in not giving treble damages.

Section 3346 of the Civil Code read at the time this cause arose: ''For wrongful injuries to timber, trees, or underwood upon the land of another, or removal thereof, the measure of damages is three times such a sum as would compensate for the actual detriment, except where the trespass was casual and involuntary, or committed under the belief that the land belonged to the trespasser, . . .''

Treble damages could only be awarded under the above statute where the wrongdoer intentionally acted wilfully or maliciously. The required intent is one to vex, harass or annoy, and the existence of such intent is a question of fact for the trial court. (*Crofoot Lumber, Inc.* v. *Ford,* 191 Cal.App.2d 238 [12 Cal.Rptr. 639].) In the case at bench the court found upon substantial evidence that ''plaintiffs entered into said contract fully believing said defendants Kay Shadd and Ed Studley to be the owners of the lands and timber therein described and the entry by plaintiffs into said contract was without any intent whatsoever to oppress or to defraud any person whomsoever and without malice.'' Therefore the court did not err in refusing to award treble damages to cross-complainant.

It is also claimed that interest should have been awarded from the date of the taking. There is authority for this under a theory of conversion. (See *Crofoot Lumber, Inc.* v. *Ford, supra.*) Appellant-cross-complainant quotes the following from that case at page 250: ''. . . Crofoot's recovery should have been the market value of the lumber manufactured less the reasonable costs incurred in the manufacture. The amount recovered, however, should in no event be less than the stumpage value of the timber, plus interest from the date of conversion.''

In the case at bench the court found that no profit was made by plaintiffs on the lumber resulting from the logging operations on said lands, and therefore under the rule of the *Crofoot* case cross-complainant would only be entitled to

the stumpage value plus interest from the date of conversion. The court found that the reasonable market value of the timber cut was $18,713 and that cross-complainant was entitled to one-third thereof, to wit $6,237.66. The court found also that ''Subsequent to the making and entry of the minute order herein dated July 3, 1959, plaintiffs have deposited with the Clerk of this Court on the 23rd day of July, 1959, said sum of $6,237.66 with instructions to pay the same to the guardian of said incompetent in consideration of his satisfaction thereof, which tender has been refused.''

The court rendered judgment in favor of cross-complainant and against plaintiffs ''in the amount of $6,237.66 or such greater or lesser amount as may be finally determined to be due under all the circumstances of the case, in the event that within the time prescribed by law any party hereto shall successfully appeal the herein judgment,'' and also for cross-complainant's costs in the sum of $95.58. Cross-complainant was entitled to interest from the date of the conversion, which appears to have been July 20, 1956. However, in view of the deposit by plaintiffs of the sum of $6,237.66 with the clerk of the court with instructions to pay the same to appellant-cross-complainant, we do not believe that appellant is entitled to interest on said amount after the date of the deposit.

It is the general rule that a valid tender of the amount due, including costs to the date of tender, by a judgment debtor to an appealing plaintiff stops the running of interest from that moment. As stated in *Rose* v. *Hecht*, 94 Cal.App.2d 662 [211 P.2d 347]: ''. . . A valid tender, made by a defendant pending plaintiff's appeal from the judgment, of the full amount of the judgment and costs to date of tender, stops interest from that moment. (*Ferrea* v. *Tubbs*, 125 Cal. 687, 689 [58 P. 308].)'' And as stated in *Stein* v. *Simpson*, 37 Cal.2d 79 [230 P.2d 816], at page 87: ''. . . Hence Simpson should have accepted that tender and given satisfaction for it. As said in *People* v. *Roath*, 62 Cal.App.2d 241, 246 [144 P.2d 648]: 'From what we have heretofore said it is at once apparent that respondents' claim in this regard cannot be upheld because an appellant is not precluded from prosecuting an appeal from a judgment in his favor when such appeal is for the purpose of establishing a greater claim and where, as here, it affirmatively appears that he is entitled to that which he has accepted, but is contending for something more. . . .' ''

Respondents were willing to pay the amount awarded by the court and deposited the money in court, but appellant-cross-complainant declined to accept it, probably upon the mistaken belief that by accepting it the right of appeal would be jeopardized. Only the appeal by cross-complainant permitted the interest on the amount deposited to run, and we believe it would be manifestly unfair for respondents to be required to pay interest on that amount after the deposit was made. The Sills were willing to pay and deposited the money in court. The rule is that where the only controversy is as to whether the prevailing party is entitled to a greater sum than that which he has received, acceptance of the benefits does not preclude his right to appeal. (*Estate of Hubbell,* 216 Cal. 574 [15 P.2d 503].)

For the reasons hereinabove set forth, we conclude that appellant-cross-complainant is entitled to recover in addition to the amount of $6,237.66 awarded by the court interest on said sum of $6,237.66 at the rate of 7 per cent per annum from July 20, 1956, the date of conversion, to July 23, 1959, the date of the deposit of said sum of $6,237.66 in court by respondents, amounting to the sum of $1,313.54, and interest on said sum of $1,313.54 at the rate of 7 per cent per annum thereafter; but appellant-cross-complainant is not entitled to recover interest on the sum of $6,237.66 from and after the date of the deposit by respondents of said amount in court for said appellant.

The judgment upon the cross-complaint is reversed with directions to the trial court to enter judgment in favor of the cross-complainant in accordance with the views expressed herein. The judgment in favor of Sills Brothers is to be increased by the same amount as the judgment in favor of the cross-complainant is increased, and in all other respects it is affirmed. Cross-complainant is to recover her costs against the Sills and they are to recover their costs against Siller, Shadd and Studley.

Pierce, P. J., and Friedman, J., concurred.

The petition of appellant Hatch for a rehearing in Civ. No. 10193 was denied August 29, 1963, and the petitions of defendant and appellant and defendant, cross-complainant and appellant for a hearing by the Supreme Court were denied September 18, 1963.